194

The State, ex rel. Wright et al., Appellants, *v.* Weyandt, Summit County Sheriff, Appellee.

(No. 76-1152—Decided June 15, 1977.)

*Miller & Morris Co., L. P. A., Mr. George B. Vasko* and *Mr. James L. Wagner,* for appellants.

*Gillen, Miller & Tipping Co., L. P. A., Mr. Harry A. Tipping* and *Mr. David E. Beitzel,* for appellee.

WILLIAM B. BROWN, J. The sole issue raised by this cause is whether a writ of mandamus should issue directing respondent Weyandt (1) "to adjust the pay" of relators "to reflect all across-the-board increases granted during the period of termination" and (2) "to restore relators-appellants to their former positions or positions of comparable degree and to restore them to the rank held on termination."

In *State, ex rel. Pressley,* v. *Indus. Comm.* (1967), 11 Ohio St. 2d 141, paragraph one of the syllabus, the prerequisites of an action in mandamus are set forth as follows:

"Where a public officer or agency is under a clear legal duty to perform an official act, and where there is no plain and adequate remedy in the ordinary course of the law, an action in mandamus will lie originally in the Supreme Court or in the Court of Appeals."

Mandamus will not lie unless there is a clear legal duty, and there is no adequate alternative remedy in the ordinary course of the law. See *State, ex rel. Sibarco, Corp.,* v. *City of Berea* (1966), 7 Ohio St. 2d 85, paragraph one of the syllabus and R. C. 2731.05.

Relators have such an adequate alternative remedy. Although a releasor is estopped from enforcing those rights which he relinquishes in a valid release (in this case the rights granted by the board's order) (47 Ohio Jurisprudence 2d, Release, Section 18; *Jones* v. *Jones* [1898], 15 C. C. 618, 8 C. D. 628, affirmed, 61 Ohio St. 665; see *O'Donnell* v. *Langdon* [1960], 170 Ohio St. 528), he gains the right to sue on the release itself.[2]

Relators argue, however, that they do not have an adequate remedy based on their release because their request for a return to positions identical with or comparable to the rank which they held on termination cannot be obtained in an action for damages or, under traditional contract law, in a request for specific performance. See *Masetta* v. *Nat. Bronze & Aluminum Foundry* (1953), 159 Ohio St. 306.

---

[2] Relators' argument that mandamus must lie with regard to across-the-board salary raises granted during their termination is without merit. The terms of the release are clear. It provides that relators shall be paid "at a rate of compensation *not less* than that received at the time of their respective terminations from employment * * *." (Emphasis added.) Therefore, respondent is under no contractual duty to add to these rates of compensation the raises granted during the period of termination. Moreover, as long as the release is valid and has not been set aside, relators are barred from asserting rights under the order of the state personnel board as affirmed by the Court of Common Pleas. Since respondent has no duty to pay relators the across-the-board salary increases granted during their termination, one of the prerequisites of mandamus is absent (*State, ex rel. Sibarco Corp.,* v. *City of Berea* [1966], 7 Ohio St. 2d 85), and mandamus will not issue to this across-the-board salary increase claim.

The circumstances giving rise to relators' right to reinstatement are not typical, however, of those in actions where one party requests specific performance of personal service contracts.

It is common sense that the law favors "the prevention of litigation, by the compromise and settlement of controversies." *White* v. *Brocaw* (1863), 14 Ohio St. 339, 346; *Shallenberger* v. *Motorists Mut. Ins. Co.* (1958), 167 Ohio St. 494, 505. Relators undertook to settle their cases by signing a release that expressly and unambiguously promised them, in language virtually identical to that of the order, "immediate reinstatement * * * to their former positions of employment." Given the unequivocal promise of reinstatement contained in the release, it is clear that relators did not intend to forfeit that right by settling with the respondent. It is also clear that, were it not for the fact that they agreed to the release, relators would be entitled to a writ of mandamus enforcing the board's order. See *State, ex rel. Dean,* v. *Huddle* (1976), 45 Ohio St. 2d 234. Therefore, if specific performance is denied in the instant cause, then the intent of the parties will be ignored and relators will have given up their right, pursuant to the board's order, to be reinstated to their former positions solely *because* they signed a release purporting to promise reinstatement, and because they attempted the kind of contractual solution to their legal dispute which this court and most jurisdictions favor. See 15A American Jurisprudence 2d, Compromise and Settlement, Section 5.

Equitable relief such as specific performance was originally developed to insure fairness and good faith dealings between parties. 1 Pomeroy, Equity Jurisprudence, 61, Section 56. And, although the application of equitable relief has been limited by the maxim that "equity follows the law" (Pomeroy, *supra*, at page 793, Section 425), equitable relief has been granted where a writ was unavailable or the legal remedy of damages would not make the aggrieved party whole. Pomeroy, *supra*, at pages 238, 332-333, Sections 180, 220. Given the unambiguous terms of

the release agreement, the fact that specific performance of the release would merely substitute an equitable remedy for the legal remedy of mandamus which relators would have had but for the release, and the fact that the available legal remedy in damages would not be an adequate remedy for their asserted right to their former positions, the instant cause would be appropriate for an award of equitable relief.

Moreover, it is the duty of a court deciding whether to grant equitable relief such as specific performance "'to adapt its practice and course of proceeding as far as possible to the existing state of society, and to apply its jurisdiction to all those new cases which, from the progress daily making in the affairs of men, must continually arise, and *not*, from too strict an adherence to forms and rules established under very difficult circumstances, decline to administer justice, and to enforce rights for which there is no other remedy.'" (Emphasis *sic*.) *Columbus Packing Co. v. State, ex rel. Schlesinger* (1919), 100 Ohio St. 285, 294.

The concept that equitable relief should adapt itself to the changing demands of society is particularly applicable to a grant of specific performance of relators' settlement agreement. The claim to reinstatement which relators traded for a virtually identical contract promise in the release was created by the civil service rules of R. C. Chapter 124. That body of legislation reflects legislative judgment that the employment rights of civil servants should be regulated by more than common-law contract principles and provides a method for adjudicating civil service disputes which may well lead to future attempts at settlement similar to that entered into by relators.[3] Legislative judgment and the possibility of increasing numbers of set-

[3]R. C. Chapter 124 creates a State Personnel Board of Review (R. C. 124.02) which has certain powers to hear appeals from classified state service employees who have been discharged, reassigned, *etc.*, and to affirm, disaffirm or modify those discharges or reassignments (R. C. 124.03). Under R. C. 124.34 police and fire department classified service. employees have a similar right of appeal.

tlement contracts calling for employee reinstatement require that specific performance be granted in the instant cause if equity is "to adapt its practice * * * to the existing state of society * * *." *Columbus Packing, supra.*

Finally, the traditional objections to granting specific performance of personal service contracts do not apply in the instant cause. The legislative decision that civil servants may be awarded reinstatement under certain circumstances outweighs the common law "lack of mutuality" objection to specific performance of personal service contracts, and it should be no more difficult for a court to enforce the contractual provision for "immediate reinstatement" to relators' "former positions" than it would have been for a court to enforce the order of the personnel board —that relators be "reinstated to their positions effective on the date of their termination."—by a writ of mandamus.

We find, therefore, that specific performance of a reinstatement provision in a settlement agreement is appropriate when, as in the instant cause, the settlement agreement provides for reinstatement in clear and unambiguous terms and when the settlement promise of reinstatement is given in exchange for the relinquishment of a statutorily-created right to reinstatement.

Since an action by relators on the release agreement can be enforced by specific performance of the reinstatement provision, and relators can also claim any other violation of the release in an action for damages, relators have an adequate remedy alternative to mandamus, and the writ must be denied. We, of course, express no view as to the merits of relators' claims. The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, P. BROWN, SWEENEY and LOCHER, JJ., concur.