4

# LOVE

v.

## UNIVERSITY OF CINCINNATI HOSPITAL.

Court of Claims of Ohio.

No. 96–03138.

Decided Sept. 3, 1997.

_Howard D. Cade III,_ for plaintiff.

_Betty D. Montgomery,_ Attorney General, and _Rosa P. Wright,_ Assistant Attorney General, for defendant.

FRED D. GARTIN, Magistrate.

On June 16, 1997, a trial was held before the magistrate. Plaintiff's action alleges a breach of a settlement agreement and defamation. Plaintiff further alleges that defendant's agents informed a prospective employer that plaintiff was no longer employed by defendant because he had difficulty getting along with coworkers and that an unprofessional situation had developed.

The magistrate finds that plaintiff Douglas Love was employed by defendant from April 1992 until his resignation on November 1, 1993. The parties entered into a settlement agreement when plaintiff resigned, which states, in part:

"Love acknowledges that the consideration for his resignation and the releases and waivers herein is stated in Paragraph 2 above. University records shall indicate that Love resigned to seek other employment. The date of his resignation shall be deemed to be November 1, 1993. In response to requests from outside the University, to the extent permitted by law, the University will volunteer only dates of employment, rates of pay, titles of positions held, accomplishments in the favor of Love (provided requests for such information are directed only to Michael Grodi or Terry White), and that Love resigned, as contained in this paragraph. In addition, the University shall make available to Love through October 31, 1994, outplacement services and counseling to assist his search for employment."

On May 10, 1994, Connie Torrence–Thomas contacted Michael Grodi, Administrator for Hospital Services at the University of Cincinnati, to discuss plaintiff's qualifications. Torrence–Thomas had previously known plaintiff and was contacting Grodi to verify his references for a contract manager position at the Gillis W. Long Hansen Disease Center in Louisiana. Grodi informed Torrence–Thomas that the position that plaintiff had held had been abolished. When asked whether plaintiff would be rehired if that were to become an option, Grodi informed

Torrence–Thomas that he would not rehire plaintiff, since an unprofessional situation had developed between plaintiff and the food service manager. When questioned further, Grodi stated that plaintiff had a difficult time dealing with his coworkers, especially his subordinates. Torrence–Thomas testified that as a result of Grodi's remarks, she did not recommend plaintiff for the contract manager position at the Louisiana facility, nor did she forward his name to anyone else at the center for consideration.

■ It is axiomatic that a settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and that such agreements are valid and enforceable by either party. *Spercel v. Sterling Industries* (1972), 31 Ohio St.2d 36, 38, 60 O.O.2d 20, 21–22, 285 N.E.2d 324, 325. See, also, 15 Ohio Jurisprudence 3d (1979) 511, 516, Compromise, Accord, and Release, Sections 1 and 3; and *Bolen v. Young* (1982), 8 Ohio App.3d 36, 8 OBR 39, 455 N.E.2d 1316. Further, settlement agreements are highly favored in the law. *State ex rel. Wright v. Weyandt* (1977), 50 Ohio St.2d 194, 4 O.O.3d 383, 363 N.E.2d 1387; *Spercel, supra.*

■ The words in the settlement agreement must be given their plain meaning. Any negative reference is contrary to the wording utilized in the settlement agreement. See *TRINOVA Corp. v. Pilkington Bros., P.L.C.* (1994), 70 Ohio St.3d 271, 276, 638 N.E.2d 572, 575–576; *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 638–639, 597 N.E.2d 499, 501–502; *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 922–923. The magistrate finds that although Torrence–Thomas could not hire plaintiff, she could have recommended him for the contract position; however, as a result of Grodi's comments, she chose not to recommend him for the position. The magistrate finds that Grodi's comments did breach the settlement agreement, since he was to provide only "accomplishments in the favor of Love." Therefore, the magistrate finds that plaintiff's breach of contract claim was proven by a preponderance of the evidence.

■ As to the defamation claim, defendant proved by a preponderance of the evidence that plaintiff did have trouble getting along with at least two coworkers. Truth is a complete defense to a claim for defamation. R.C. 2739.02 states: "In an action for a libel or a slander, the defendant may allege and prove the truth of the matter charged as defamatory. *Proof of the truth thereof shall be considered a complete defense.*" (Emphasis added.) See, also, *Shifflet v. Thomson Newspapers, Inc.* (1982), 69 Ohio St.2d 179, 183, 23 O.O.3d 205, 207, 431 N.E.2d 1014, 1017. The magistrate finds that defendant was truthful in what was told to Torrence–Thomas, despite the fact that, pursuant to the settlement agreement, it should not have been communicated. Therefore, defendant shall prevail on the

defamation claim.  Based upon the above, judgment is rendered in favor of plaintiff on the breach of settlement agreement and in favor of defendant on plaintiff's defamation claim.

*Judgment accordingly.*