DECISION AND JOURNAL ENTRY
{¶ 1} Appellants, Garry Hartman, as executor of the estate of Janice Hartman-Smith, and Betty Lippincott, appeal from the order of the Wayne County Court of Common Pleas, which granted appellee's, Grace Malz', motion for summary judgment, thereby dismissing all claims against appellee. This Court affirms.
 I. {¶ 2} On or about June 30, 1970, John Smith[1] married Janice Hartman. Some time in 1974, Janice disappeared. On or about October 3, 2000, John Smith was arrested and charged with the murder of Janice Hartman-Smith. John Smith was subsequently convicted of Janice's murder and sentenced accordingly.
 {¶ 3} On July 14, 2003, appellants filed a complaint against John Smith, alleging wrongful death, loss of consortium, intentional and negligent infliction of emotional distress, and civil conspiracy. In the complaint, appellants alleged that appellee was liable for intentional and negligent infliction of emotional distress and civil conspiracy. The premise of appellants' complaint against appellee was that she knew the whereabouts of Janice's body and withheld that information, causing severe emotional harm and other injuries to appellants. In addition, appellants alleged that they were entitled to punitive damages as a result of appellee's willful, wanton and malicious conduct in conscious disregard of appellants' rights and well-being. The underlying facts are as follows.
 {¶ 4} John Smith's brother Michael Smith testified during deposition that he saw John building a box in their grandfather's garage soon after Janice's disappearance in 1974. John told him that he needed some place to store some of Janice's clothing. In 1979, the grandfather found the box and called Michael. Michael opened the box and found the dismembered remains of Janice Hartman-Smith. John was notified and he came and took the box with Janice's remains to Indiana. Michael testified that John told him that he was going to either burn the box or seal it within the basement walls of a house, presumably in Indiana. The box containing Janice's remains was ultimately found in neither of those places; rather, the box and remains were found in a field in Indiana.
 {¶ 5} Michael admitted to repeating various versions of the story of Janice's death and the whereabouts of her dismembered body over the next twenty years. He further testified that he drank heavily and that he never told anyone the truth about his discovery until 1999. Michael testified that he once told his mother, appellee, an untrue version of the story after he spent the night drinking, but that appellee did not believe him and accused him of drinking too much and being jealous of his brother John. In the end, Michael testified that only he and his grandfather knew the true story about Janice's death and whereabouts from 1979 until 1999.
 {¶ 6} Stephen Malz, appellee's youngest son, testified at deposition that, when Stephen was eight or nine years old, his half-brother Michael Smith told him a story about Janice's body having been found in a box. Stephen testified that appellee was in the room during the story, that he believed appellee heard the story, but that he did not know whether appellee listened to or processed what Michael was saying. Ultimately, Stephen testified that he had no independent knowledge that appellee knew the whereabouts of Janice's body.
 {¶ 7} Tawnya Smith, Michael's wife, testified at deposition that Michael made some vague reference to Janice's death and the whereabouts of her body. Tawnya testified that Michael did not elaborate, because he commented that she would not believe him if his own mother did not. Tawnya finally testified that she, too, had no independent knowledge regarding what appellee may or may not have known about Janice's whereabouts until 1999.
 {¶ 8} Finally, appellee testified at deposition that she was not aware of the circumstances of Janice's death or that Michael observed Janice's body in the box in 1979 until 1999.
 {¶ 9} Appellee filed a motion for summary judgment in regard to the claims of intentional and negligent infliction of emotional distress, civil conspiracy, and the claim for punitive damages. In regard to the claim for intentional infliction of emotion distress, appellee argued that there was no evidence that she knew about Janice's death or the whereabouts of Janice's body, so that she could not have intended to cause any harm to appellants. In addition, appellee argued that her inaction, i.e. failing to disclose information she did not have, could not rise to the level of extreme and outrageous conduct. Finally, appellee argued that appellants failed to provide any evidence that they suffered severe and debilitating emotional distress such that a reasonable person would be unable to endure.
 {¶ 10} In regard to the claim for negligent infliction of emotional distress, appellee argued that appellants failed to submit any evidence that they were bystanders who witnessed Janice's death or that they were ever in fear of actual physical harm themselves.
 {¶ 11} In regard to the claim of civil conspiracy, appellee argued that appellants failed to present any evidence that there was any conspiracy between appellee and John Smith regarding Janice's death or the whereabouts of her body.
 {¶ 12} Finally, in regard to the claim for punitive damages, appellee argued that appellants presented no evidence that appellee acted maliciously so that appellants suffered severe emotional harm.
 {¶ 13} Appellants filed a response in opposition to appellee's motion for summary judgment only in regard to the claims of intentional infliction of emotional distress and punitive damages.
 {¶ 14} In a letter to the parties filed and time-stamped October 13, 2004, the trial court informed that it found that appellee's motion for summary judgment was well-taken and should be granted. The trial court directed appellee's counsel to "draft and submit an appropriate entry granting summary judgment in favor of Grace C. Malz and against the plaintiffs as prayed for in her motion for summary judgment." On October 22, 2004, the trial court issued a journal entry granting appellee's motion for summary judgment and dismissing all claims against her with prejudice. On October 28, 2004, the trial court issued a journal entry finding its October 22, 2004 order to be final and appealable, noting "no just reason for delay." Appellants timely appeal, raising one assignment of error for review.
 II. ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO GRACE MALZ."
 {¶ 15} Although appellee addressed all four claims in her motion for summary judgment, appellants only argue on appeal that the trial court erred in granting summary judgment to appellee in regard to the claims of intentional infliction of emotional distress and punitive damages. This Court disagrees.
 {¶ 16} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co.
(1983), 13 Ohio App.3d 7, 12.
 {¶ 17} Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 18} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) prides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. State ex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447, 449.
 {¶ 19} To prevail on a claim for intentional infliction of emotional distress, appellants must prove that (1) appellee intended to cause emotional distress, or she knew or should have known that her actions would result in serious emotional distress; (2) appellee's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and could be considered to be completely intolerable in a civilized community; (3) appellee's actions proximately caused psychic injury to appellants; and (4) appellants suffered serious mental anguish of a nature no reasonable person could be expected to endure. McPherson v. GoodyearTire Rubber Co., 9th Dist. No. 21499, 2003-Ohio-7190, at ¶ 33.
 {¶ 20} The parties spend a great deal of time arguing about whether or not appellee knew the circumstances of Janice's death and the whereabouts of her remains during the twenty years prior to John Smith's prosecution for Janice's murder. Appellee testified that she did not know anything about Janice's death or the whereabouts of her remains until 1999, while others testified that appellee was present for conversations regarding the same as early as 1980. This Court, however, finds appellee's knowledge of the circumstances surrounding Janice's disappearance and death immaterial to the issue on appeal. Even assuming that appellee knew about Janice's murder and the whereabouts of her remains, appellee engaged in no conduct that could be characterized as extreme and outrageous.
 {¶ 21} Appellants' allegation is that appellee failed to disclose information about Janice and that appellants' lack of such information caused them severe emotional distress. Under circumstances where there is a duty to act, the failure to act may constitute extreme and outrageous conduct. Doe v. Roman, 5th Dist. No. 2001-AP-05-0044, 2002-Ohio-6671, at ¶ 41. In Roman, the appellate court held that the trial court erred by granting summary judgment in favor of a school principal on a claim of intentional infliction of emotional distress where the principal failed to investigate allegations of inappropriate sexual behavior between a teacher and a student, because the principal had a duty to look out for the welfare of the students. Id. The Fifth District found that the principal's failure to investigate the allegations or report the matter to the school social worker could be construed as "outrageous conduct." Id. Therefore, where a duty to act exists, the failure to act may constitute the extreme and outrageous behavior necessary to substantiate a claim for intentional infliction of emotional distress.
 {¶ 22} As a necessary corollary, however, in the absence of a duty, the failure to disclose known information cannot be actionable as intentional infliction of emotional distress. See Homan v. George
(1998), 127 Ohio App.3d 472. In Homan, friends of Kelle Homan, knowing she was an alcoholic, served her alcohol in their home. Kelle became highly intoxicated. Kelle's son called the friends' home, asking about Kelle's whereabouts and indicating his desire to either pick Kelle up or arrange other transportation, so that Kelle would not drive home while intoxicated. The friends lied to Kelle's son, asserting that they did not know Kelle's whereabouts. The friends effectively prevented Kelle's son from ensuring that his mother would not drive while intoxicated. Kelle ultimately left her friends' home and was injured while driving while intoxicated. The Tenth District affirmed the trial court's dismissal of the son's claim for intentional infliction of emotional distress as against the friends, because the son failed to establish that the friends had any legal duty to disclose Kelle's whereabouts or that she was intoxicated. Homan, 127 Ohio App.3d at 477. This Court finds the issue in Homan analogous to the issue before us.
 {¶ 23} Assuming that appellee knew about Janice's death and the whereabouts of her remains prior to 1999, appellee had no legal duty to disclose that information to appellants. Where appellee had no duty to disclose such information, her failure to disclose cannot be deemed to constitute intentional infliction of emotional distress. Because appellants have failed to present any evidence that appellee had a duty to disclose such information, they have failed to demonstrate that a genuine issue of material fact exists in regard to appellee's conduct. Consequently, summary judgment was properly granted to appellee in regard to the claim for intentional infliction of emotional distress.
 {¶ 24} This Court next considers the trial court's granting of summary judgment in favor of appellee in regard to appellants' claim for punitive damages.
 {¶ 25} R.C. 2315.21(C) states that a plaintiff may not recover punitive damages from a defendant in a tort action unless both of the following apply:
"(1) The actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud * * *
"(2) The trier of fact has returned a verdict or has made a determination * * * of the total compensatory damages recoverable by the plaintiff from that defendant."
 {¶ 26} Without an award of compensatory damages on appellants' tort claims, there can be no award of punitive damages. Because the trial court properly granted summary judgment in favor of appellee on appellants' claims, there can be no award of punitive damages based on those claims. Accordingly, the trial court did not err by granting summary judgment in favor of appellee in regard to appellants' claim for punitive damages.
 {¶ 27} For the foregoing reasons, appellants' assignment of error is overruled.
 III. {¶ 28} Appellants' assignment of error is overruled. Accordingly, the order of the Wayne County Court of Common Pleas, which granted summary judgment in favor of appellee and dismissed all claims against her, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellants.
Exceptions.
Slaby, P.J. Whitmore, J. concur.
[1] John Smith is a defendant in the case below, but he is not a party to this appeal.