OPINION
{¶ 1} This is an appeal from a tort complaint arising out of an automobile accident in July, 2002. Appellant Nick Stanton ("Stanton") filed the complaint in the Belmont County Court of Common Pleas alleging that Appellee Joseph Holler ("Holler") was driving under the influence of alcohol and hit Appellant head-on, then fled the scene of the accident. The parties entered in settlement negotiations. Appellant's attorney notified the court that a settlement had been reached, but a few days later the attorney changed his mind because he found new caselaw that he thought might help his client preserve a bad faith claim against the tortfeasor's insurance company. The trial court enforced the settlement, and Appellant appealed, arguing that there was no settlement agreement. The record indicates that Appellant's counsel simply changed his mind about the settlement, that he admitted he made a mistake in his research, and that the tortfeasor's bankruptcy proceeding discharged any remaining claims regarding the automobile accident. The record supports the trial court's conclusion that there was an enforceable settlement agreement, and the judgment of the trial court is affirmed.
 BACKGROUND TO THE CASE {¶ 2} Appellant was involved in a car accident with Holler on July 29, 2002. Appellant filed a personal injury complaint against Holler on July 28, 2004. Holler was covered by an automobile insurance policy issued by Nationwide Insurance, with limits of $12,500. Nationwide supplied an attorney to represent Holler in the civil suit.
 {¶ 3} In the lawsuit, Appellant alleged that Holler was intoxicated at the time of the accident. Appellant also sued Yoker One, Inc., doing business as a bar called *Page 2 
Mouse Trap Café, because Appellant alleged that Holler had been drinking at the Mouse Trap prior to the accident. Yoker One, Inc., was later dismissed as a defendant.
 {¶ 4} Appellant's complaint alleged both negligence and recklessness, and also contained a claim for punitive damages based on malicious conduct.
 {¶ 5} On August 3, 2005, Joseph R. and Dana Lynn Holler filed a notice that they had filed a Chapter 7 bankruptcy petition. The proceedings in the trial court were stayed pending the resolution of the bankruptcy. The Hollers notified the court on May 26, 2006, that they had received a discharge in bankruptcy on November 29, 2005.
 {¶ 6} As the parties proceeded with the early stages of discovery, the court ordered the bifurcation of the punitive damages portion of the case.
 {¶ 7} The parties entered into settlement negotiations. An issue was raised during the negotiations regarding whether Mr. Holler might have a bad faith insurance claim against his insurer, Nationwide, and whether that claim would be part of the settlement. Since Nationwide had provided Mr. Holler with an attorney, and given the obvious conflict which would arise if the appointed attorney also investigated a potential bad faith claim, Mr. Holler obtained separate counsel to prepare a release for Nationwide.
 {¶ 8} On February 16, 2007, Appellant's attorney informed the court that a settlement had been reached. On February 21, 2007, the trial court filed a judgment entry that stated: "Case continued twenty (20) days pending Settlement Entry." *Page 3 
 {¶ 9} A few days later, on February 27, 2007, Appellant's lawyer informed Appellee and the court that he had discovered new caselaw relating to the potential bad faith claim against Nationwide and that, as far as he was concerned, there was no settlement. The caselaw to which counsel referred apparently indicated that Appellant could not pursue an assigned bad faith claim unless an excess judgment, above and beyond the limits of the insurance policy, had already been adjudicated. According to the settlement the parties reached, there was no excess judgment, because the settlement was for the policy limits.
 {¶ 10} On March 12, 2007, Appellees filed a motion to enforce settlement. The trial court ordered an evidentiary hearing on April 16, 2007, to determine the enforceability of settlement.
 {¶ 11} At hearing, Appellant's attorney admitted that he failed to properly research the law concerning his case. He said that he should not have agreed to settle the case, and that his client might lose a potential source of recovery if the settlement was enforced. Appellant's counsel actually gave conflicting reasons why, in his view, the settlement was not enforceable. He also raised issues concerning the applicability of bankruptcy law to the case. It is clear that the trial court became frustrated with counsel for Appellant's answers and behavior in the courtroom, and at one point stated: "Mr. Miller, you're trying my patience. I have witnesses who come in here who don't act like you do right now. And have more respect for the Court than you do." (Tr., p. 26.) Counsel admitted a number of times that he had erred in either agreeing to the settlement, or declaring that there was a settlement, and that *Page 4 
he failed to do sufficient legal research prior to accepting the settlement. He stated: "I made a mistake and I will own that Judge, and I ask you to not to penalize my client because of mistakes that I have made." (Tr., p. 46.)
 {¶ 12} On June 7, 2007, the court filed its judgment. The court held that there was an enforceable settlement. The terms of the settlement were that Appellees Joseph and Dana Holler would pay Appellant $12,500 in release of all claims as to compensatory damages. The court also held that any remaining claims for compensatory or punitive damages had been discharged in bankruptcy. The court ordered the case to proceed to trial against the one defendant remaining at the time, Yoker One, Inc. Appellant filed a slightly premature appeal on July 5, 2007. On July 6, 2007, Yoker One, Inc. was voluntarily dismissed from the case. On July 6, 2007, the court filed a journal entry finding that the case was terminated. We will treat the premature appeal as having been filed immediately after the entry of judgment of the final appealable order. App. R. 4(C).
 ASSIGNMENT OF ERROR NO. 1 {¶ 13} "The Trial Court erred in granting Appellee's Motion to Enforce Settlement."
 {¶ 14} A settlement agreement is a contract designed to prevent or end litigation. Continental W. Condominium Unit Owners Assn. v. Howard E.Ferguson, Inc. (1996), 74 Ohio St.3d 501, 502, 660 N.E.2d 431. Settlement agreements are highly favored as a means of resolving disputes. State ex rel. Wright v. Weyandt (1977), 50 Ohio St.2d 194,197, 4 O.O.3d 383, 363 N.E.2d 1387. A trial court *Page 5 
possesses full authority to enforce a settlement agreement voluntarily entered into by the parties. Mack v. Polson Rubber Co. (1984),14 Ohio St.3d 34, 36, 14 OBR 335, 470 N.E.2d 902. A settlement agreement that has not been reduced to writing may be enforced if its terms can be established by clear and convincing evidence. Brilla v. Mulhearn,168 Ohio App.3d 223, 2006-Ohio-3816, 859 N.E.2d 578, ¶ 20. "[W]hen the parties agree to a settlement offer, this agreement cannot be repudiated by either party, and the court has the authority to sign a journal entry reflecting the agreement and to enforce the settlement." Klever v. Cityof Stow (1983), 13 Ohio App.3d 1, 4, 468 N.E.2d 58.
 {¶ 15} The existence of an oral agreement or contract, and the determination of its specific terms, are factual matters to be determined by the trier of fact. Rutledge v. Hoffman (1947),81 Ohio App. 85, 86, 75 N.E.2d 608.
 {¶ 16} The standard of review that applies to a ruling on a motion to enforce a settlement agreement is twofold. On the legal questions concerning the interpretation or construction of the settlement agreement, we review to determine whether the trial court applied an erroneous standard or misconstrued the law. Continental W. CondominiumUnit Owners Assn., supra, at 502. If the question is a factual or evidentiary one, the trial court's finding will not be overturned if there was sufficient evidence to support such finding. Chirchiglia v.Ohio Bur. of Workers' Comp. (2000), 138 Ohio App.3d 676, 679,742 N.E.2d 180.
 {¶ 17} In this case, Appellant attempted to repudiate a settlement after he notified the court that a settlement had been reached. Once Appellant's counsel *Page 6 
notified the court that a settlement was reached, counsel was estopped from repudiating the settlement. The trial court specifically found that Appellant's counsel demonstrated objective manifestations to Appellee and to the court that a meeting of the minds had taken place, and the record certainly supports the trial court's conclusion.
 {¶ 18} Appellant's further argument on appeal is that the parties did not actually agree to the terms of settlement such that there was any meaningful meeting of the minds between the parties. The trial court found that the terms of the settlement were that all of Appellant's claims pertaining to the issue of compensatory damages would be dismissed upon the payment of $12,500 to Appellant by Appellees.
 {¶ 19} As to the exact terms of the oral settlement agreement, the trial court, as the trier of fact, was free to believe or disbelieve any of the evidence submitted at the enforcement hearing. It is apparent from comments made by Appellant's counsel that he was not a particularly reliable source of information, and his theories on why the settlement was not enforceable seemed to change moment by moment. According to his explanations, on or about February 16, 2007, the only matter to be resolved between the parties was whether there would be one release to include both Holler and Nationwide, or two separate releases. At this point, he notified the court that a settlement had been reached. On or about February 25, 2007, counsel decided there was no settlement because he found caselaw that put into doubt whether he could later pursue a potential bad faith claim against Nationwide. By the *Page 7 
time of the April 16, 2007, hearing, counsel's new theory was that Appellant's punitive damages claim might not have actually been discharged in bankruptcy. Counsel noted that he had completed only one bankruptcy case in his career. Nevertheless, he did not want to settle the case based on the possibility that he might still be able to recover punitive damages, despite the fact that Appellees had received a full discharge in bankruptcy for any debt related to Appellant's lawsuit.
 {¶ 20} The record reveals that the parties had entered into an oral settlement agreement, where the only unresolved matter was whether there would be one or two release documents. Appellant's lawyer personally notified the court that settlement had been reached on February 16, 2007. That lawyer's later legal research concerning the requirements for preserving a bad faith insurance claim indicates only that proper preservation of this supposed bad faith claim was not part of the original settlement agreement. Counsel essentially admitted on the record that he had improvidently agreed to settlement terms that destroyed any possibility of pursuing a bad faith claim. Appellant's counsel cannot argue both that he made a mistake by accepting a settlement that destroyed his bad faith claim, and also argue that he never actually entered into a settlement. The court was within its power in accepting counsel's admission that he basically nullified the bad faith claim by accepting the terms of the settlement. Thus, the court was correct in both enforcing the settlement and in refusing to essentially add terms to the settlement to provide for a later bad faith claim by Appellant. *Page 8 
 {¶ 21} The terms of the settlement agreement are clear and understandable. Appellees have not filed any cross-appeal. Thus, Appellees appear to accept the terms as found by the trial court in the court's judgment entry. There is no legal principle which would bar settlement of this personal injury lawsuit, and the record fully supports the trial court's conclusions as to the terms of the settlement. Therefore, the trial court did not err in enforcing the settlement, and this assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 2 {¶ 22} "The trial court erred in dismissing Appellant's claims for punitive damages."
 {¶ 23} Appellant believes that the trial court should not have dismissed any potential claims for punitive damages, particularly based on the rationale set forth by the trial court in its judgment entry. The trial court based its dismissal on the fact that Appellees had received a discharge in bankruptcy on November 29, 2005, and that damages that may arise from Appellant's lawsuit was specifically listed as one of the items that had been discharged. Appellant raises some perplexing arguments regarding whether certain claims are nondischargeable in bankruptcy, and those arguments merit some attention.
 {¶ 24} Appellant's counsel told the court that he had only been involved with one bankruptcy case. He admitted that he did not know very much about bankruptcy law, but he nevertheless asserted that certain debts were not dischargeable in bankruptcy. The supposed section of the United States Code that Appellant cites in *Page 9 
this brief does not exist. Appellant may have been referring to11 U.S.C. 523(a)(6), which states:
 {¶ 25} "(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt —
 {¶ 26} "* * *
 {¶ 27} "(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;"
 {¶ 28} Yet, further along in the statute, this limitation appears:
 {¶ 29} "(c)(1) Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section."
 {¶ 30} There is certainly no indication from Appellant that he requested an exception from discharge from the bankruptcy court regarding damages arising from any willful or malicious injury caused by Joseph Holler or any other defendant in this case. Appellant fully acknowledges that he would now be required to reopen the bankruptcy proceedings in order to have any hope of acting upon the punitive damages aspect of the personal injury claim. Whether or not he might convince the bankruptcy court to reopen the bankruptcy does not alter the fact that, at present, Appellant has no viable claim for punitive damages. The trial judge appears to have *Page 10 
been correct that any relief that Appellant might obtain must first take place in the bankruptcy court.
 {¶ 31} Appellant may also have been attempting to cite11 U.S.C. 523(a)(9), which states:
 {¶ 32} "(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt —
 {¶ 33} "* * *
 {¶ 34} "(9) for death or personal injury caused by the debtor's operation of a motor vehicle, vessel, or aircraft if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance;"
 {¶ 35} Subsection (9) establishes that personal injury claims relating to drunk driving accidents are nondischargeable in bankruptcy. Subsection (9) is not part of the list of items in 11 U.S.C. 523(c)(1) described as presumptively dischargeable debts that require a creditor to actively seek and obtain an exception from discharge to preserve the debt. Appellant may be correct that a subsection (9) claim is a nondischargeable debt as a matter of law, although he cites no caselaw or statutory provision allowing such an issue to be resolved in state court instead of bankruptcy court. There is some support for the notion that creditors are free to ask state courts to rule on whether specific debts have been discharged in bankruptcy:
 {¶ 36} "State and federal courts have concurrent jurisdiction to determine whether debts are nondischargeable under Section 523(a)(5).Barnett v. Barnett (1984), 9 Ohio St.3d 47, 49, 9 OBR 165, 166-167,458 N.E.2d 834, 836. While *Page 11 
federal law in this area is controlling, state law may be used as a source of guidance in developing federal standards for determining the nature of the debt and the applicability of the Section 523(a)(5). Id."Bratton v. Frederick (1996), 109 Ohio App.3d 13, 16, 671 N.E.2d 1030.
 {¶ 37} In the instant case, though, the trial court was faced with a judgment of discharge from bankruptcy specifically listing damages which might arise from Appellant's lawsuit concerning the automobile accident with Mr. Holler as an item that had been discharged. In this context, the trial judge was faced with issues of res judicata, full faith and credit of judgment from another court, and the intricacies of procedural law in bankruptcy cases. It was no longer an abstract question of whether a state court could decide whether a certain type of personal injury claim could possibly survive a general discharge in bankruptcy. The evidence of record reveals that the debt had actually been discharged. The trial court, understandably, gave full faith and credit to the bankruptcy discharge notice, and the court explained to Appellant that any challenges to the bankruptcy discharge would need to take place in bankruptcy court, itself.
 {¶ 38} There are further reasons for affirming the trial court's judgment in this matter. If Appellant had examined the bankruptcy caselaw governing 11 U.S.C. 523(a)(9), he would have discovered that such debt is nondischargeable, but only upon proof that the bankrupt debtor was legally intoxicated under state law governing the operation of motor vehicles. Simpson v. Phalen (Bankr.N.D.Ohio 1992),145 B.R. 551, 554; In re Howard (Bankr.S.D.Ohio 1996), 193 B.R. 835, 837. In other words, *Page 12 
Appellant would need to demonstrate to the trial court that Mr. Holler violated R.C. 4511.19, either by proof of a criminal conviction, or evidence that would support a criminal conviction under R.C. 4511.19. Appellant did not provide any such proof.
 {¶ 39} Furthermore, Appellant could not pursue any type of punitive damages claim unless there had already been a determination of compensatory damages. R.C. 2315.21(C)(2). "Without an award of compensatory damages on appellants' tort claims, there can be no award of punitive damages." Hartman v. Smith, 9th Dist. No. 04CA0079,2005-Ohio-3299, ¶ 26. In the instant case, there is no judgment awarding compensatory damages. The parties entered into a settlement in which Appellees agreed to pay $12,500 and Appellant agreed to forego any claim to compensatory damages. There is no admission by Appellees that their payment to Appellant, or any part of it, consists of compensatory damages. Whether by accident or design, the very nature of Appellant's settlement prohibits him from pursuing further punitive damages.
 {¶ 40} Based on the facts of this case, the trial court properly dismissed the punitive damages claims raised in Appellant's complaint. Appellant's second assignment of error is overruled.
 {¶ 41} Because there is no merit to either of Appellant's assignments of error, the judgment of the trial court is affirmed.
 Donofrio, J., concurs. Vukovich, J., concurs. *Page 1