[Cite as *State ex rel. Voleck v. Powhatan Point*, 127 Ohio St.3d 299, 2010-Ohio-5679.]

THE STATE EX REL. VOLECK ET AL., APPELLANTS, *v.*

VILLAGE OF POWHATAN POINT, APPELLEE.

[Cite as *State ex rel. Voleck v. Powhatan Point*,

127 Ohio St.3d 299, 2010-Ohio-5679.]

*Mandamus — Remedy for a claim that public water supply is impure is a complaint before the Ohio Environmental Protection Agency or a breach-of-contract action in common pleas court — Judgment affirmed.*

(No. 2010-0449 — Submitted November 16, 2010 — Decided November 24, 2010.)

APPEAL from the Court of Appeals for Belmont County,

No. 08-BE-33, 2010-Ohio-615.

_____

**Per Curiam.**

{¶ 1}   This is an appeal from a judgment denying a writ of mandamus to compel appellee, village of Powhatan Point, to provide visually clean and chemically pure water to appellants, village residents John and Virginia Voleck. Because the Volecks failed to establish their entitlement to the requested extraordinary relief, we affirm the judgment denying the writ.

**Facts**

{¶ 2}   The Volecks live in the village of Powhatan Point, Belmont County, Ohio, and they pay the village to supply water to their home. According to the Volecks, the water is visually dirty, contains an unacceptable level of contaminants, and smells. The Volecks complained about the water, and the village reimbursed them for some water filters, which did not remedy the problem.

**{¶ 3}** In 2006, the Volecks complained to the Ohio Environmental Protection Agency ("EPA") about sediment, i.e., sand or gravel, in their water line. After investigation, the state EPA determined the village water supply to be in compliance with both state and federal standards and so took no enforcement action against the village. No one else using the same water main as the Volecks had complained to the village. A Belmont County Water Department test done in December 2007 indicated that water tested at the tap-in location for the water main contained iron and manganese at levels within the suggested federal EPA standards, whereas water inside the Volecks' home had much higher levels. The village concluded that the problem was in the Volecks' lateral line between the main water source and their water filter, which is the residents' own responsibility.

**{¶ 4}** The Volecks hired Valiant Roxby, an engineer, to test their water in 2007 through 2009. Roxby concluded that the water in the Volecks' residence was "visually dirty and contaminated, undrinkable and unsuitable for use." He also found that the water had levels of iron and manganese that exceeded the federal EPA's secondary standards. According to Roxby, the source of the contamination was outside the Volecks' household water pipes and was likely caused by acid mine drainage leaching into the village's well field.

**{¶ 5}** In November 2008, the Volecks filed a petition in the Court of Appeals for Belmont County for a writ of mandamus to compel Powhatan Point to provide "visually-clean and chemically-pure water" to them. The village filed an answer, and the parties submitted motions for summary judgment. The Volecks argued that their mandamus claim is premised upon the village's "contractual duty when failing to provide clean and pure drinking water to a customer's home" and that "their claim is one in contract." In February 2010, the court of appeals granted the village's motion and denied the writ. *State ex rel. Voleck v. Powhatan Point*, Belmont App. No. 08-BE-33, 2010-Ohio-615, ¶ 11-12.

**{¶ 6}** This cause is now before the court upon the Volecks' appeal as of right.

### Legal Analysis

**{¶ 7}** The Volecks request a writ of mandamus to compel the village to provide visually clean and chemically pure water to them. Mandamus will not issue when the relators have an adequate remedy in the ordinary course of law. *State ex rel. Natl. Emps. Network Alliance, Inc. v. Ryan*, 125 Ohio St.3d 11, 2010-Ohio-578, 925 N.E.2d 947, ¶ 1; R.C. 2731.05. "An administrative appeal generally provides an adequate remedy in the ordinary course of law that precludes extraordinary relief in mandamus." *State ex rel. Hilltop Basic Resources, Inc. v. Cincinnati*, 118 Ohio St.3d 131, 2008-Ohio-1966, 886 N.E.2d 839, ¶ 23; *State ex rel. Glasstetter v. Rehab. Servs. Comm.*, 122 Ohio St.3d 432, 2009-Ohio-3507, 912 N.E.2d 89, ¶ 27.

**{¶ 8}** The federal Safe Drinking Water Act establishes a national safe drinking-water program developed by the federal EPA through primary and secondary drinking-water standards for specific contaminants and enforced concurrently by federal and state regulatory authorities. See generally Ohio Environmental Law Handbook (5th Ed.2004) 117. See Section 300f, Title 42, U.S.Code, for the definitions of primary and secondary drinking-water regulations. The state EPA administers laws pertaining to the public water supply in Ohio. R.C. 3745.01. One of the legislative purposes of the Ohio EPA is to "[p]rovide for enforcement of the right of the people to environmental quality consistent with human health and welfare." R.C. 3745.011(F). The General Assembly enacted R.C. Chapter 6109 "to protect the public health and welfare and to enable the state to assume and retain primary enforcement responsibility under the Safe Drinking Water Act." R.C. 6109.03. The director of environmental protection administers and enforces R.C. Chapter 6109. R.C. 6109.04(A).

**{¶ 9}** Under R.C. 6109.11, the remedy for a claim that a public water system is impure and dangerous to health is a complaint filed with the Ohio EPA. R.C. 6109.11 ("Whenever any person files with the environmental protection agency a complaint, in writing, setting forth that it is believed that water provided by a public water system is impure and dangerous to health or does not contain quantities of fluoride as required by section 6109.20 of the Revised Code, the director of environmental protection shall forthwith inquire into and investigate the conditions contained in the complaint").

**{¶ 10}** Following the investigation of the complaint, the director of environmental protection may enter an order as may be necessary, request the attorney general to commence appropriate legal proceedings, dismiss the complaint, or commence a hearing before taking action. R.C. 3745.08(B). A party to the proceeding before the director may appeal to the environmental review appeals commission for an order vacating or modifying the director's action or for an order that the director perform an act. R.C. 3745.04(B). The appeals commission has exclusive, original jurisdiction over these matters. Id. Any party adversely affected by the commission's order may appeal to the Court of Appeals for Franklin County or to the court of appeals of the district in which the alleged violation of law or regulation occurred. R.C. 3745.06.

**{¶ 11}** In July 2006, the Volecks complained to the Ohio EPA about sand or gravel in their water line. Following an investigation, the state EPA determined that their water was safe, and no enforcement action was taken against the village. Insofar as the Volecks challenge the failure of the director of environmental protection to take action on their complaint or attempt to raise a separate claim concerning the purity of their water, their exclusive remedy is through the comprehensive procedure set forth in R.C. 6109.11 and Chapter 3745. This special statutory procedure cannot be bypassed. See *State ex rel. Lorain v. Stewart*, 119 Ohio St.3d 222, 2008-Ohio-4062, 893 N.E.2d 184, ¶ 51 (actions for

declaratory judgment and injunction are inappropriate where special statutory proceedings would be bypassed).

{¶ 12} In *Cincinnati ex rel. Crotty v. Cincinnati* (1977), 50 Ohio St.2d 27, 4 O.O.3d 83, 361 N.E.2d 1340, we reached a similar conclusion. In that case, city taxpayers and water users had filed an action in a common pleas court challenging the action of the director of environmental protection to add fluoride to the city's drinking water. We held that the common pleas court lacked jurisdiction over the case because the pertinent provisions in R.C. Chapters 6111 and 3745 provided the exclusive means to complain that the public water supply is impure and dangerous to health and to challenge the director's actions on these complaints. Id. at 30.

{¶ 13} Nevertheless, the Volecks claim that they are not relegated to the exclusive administrative procedure specified in R.C. Chapters 6109 and 3745 because they are asserting rights that are beyond the standards prohibiting impure and dangerous drinking water. They claim that although the quality of their water does not violate the primary drinking-water regulations establishing maximum contaminant levels (see Ohio Adm.Code 3745-81-11 to 3745-81-12 and 3745-81-14 to 3745-81-15), it exceeds the secondary standards for certain contaminants, Ohio Adm.Code 3745-82-02, which include iron and manganese. These secondary drinking-water rules apply to contaminants that "affect aesthetic qualities relating to public acceptance of drinking water," are not federally enforceable, and are intended as guidelines by the state. Ohio Environmental Law Handbook at 121. See Ohio Adm.Code Chapter 3745-82.

{¶ 14} Assuming, arguendo, that the Volecks' mandamus claim could be construed as outside of and not barred by the administrative procedure set forth in R.C. 6109.11 and Chapter 3745, their claim would still lack merit because they fail to specify the legal duty that is legislatively imposed on the village to provide water that is superior in quality to the Safe Drinking Water Act requirements of

federal and state law. See Section 300f, Title 42, U.S.Code and R.C. Chapter 6109. " 'It is axiomatic that in mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the legislative branch of government, and courts are not authorized to create the legal duty.' " *State ex rel. Gessner v. Vore*, 123 Ohio St.3d 96, 2009-Ohio-4150, 914 N.E.2d 376, ¶ 4, quoting *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 18.

**{¶ 15}** The Volecks assert that their mandamus claim is premised on breach of contract and R.C. 2744.01(G)(2)(c), which defines a municipality's proprietary function in operating a utility. They also argue an unconstitutional taking of their property. The Volecks acknowledge that their claim would not be cognizable in mandamus if it were based solely on contract, as some of their filings in the court of appeals suggested. See *State ex rel. Wright v. Weyandt* (1977), 50 Ohio St.2d 194, 199, 4 O.O.3d 383, 363 N.E.2d 1387 (action for specific performance was an adequate remedy at law precluding writ of mandamus); *State ex rel. Russell v. Duncan* (1992), 64 Ohio St.3d 538, 538-539, 597 N.E.2d 142 (affirming dismissal of mandamus action based on, inter alia, the presence of an adequate remedy at law via an action for breach of contract).

**{¶ 16}** But the Volecks assert that their mandamus action is appropriate because the village's duty arises not only in contract but also as a result of law. "Underlying public duties having their basis in law may be compelled by a writ of mandamus," and a "breach of contract action is not a plain and adequate remedy in the ordinary course of law that precludes issuance of a writ of mandamus if relator is being damaged not solely by a breach of contract, but also by a failure of public officers to perform official acts that they are under a clear legal duty to perform." *State ex rel. V Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 472, 692 N.E.2d 198; *State ex rel. Bossa v. Giles* (1980), 64 Ohio St.2d 273, 276, 18

O.O.3d 461, 415 N.E.2d 256; *State ex rel. Montrie Nursing Home, Inc. v. Aggrey* (1978), 54 Ohio St.2d 394, 397, 8 O.O.3d 401, 377 N.E.2d 497.

{¶ 17} Nevertheless, in each of the cases cited, legislation supplied the requisite legal duty that supported the mandamus claim. See *V Cos.*, 81 Ohio St.3d at 474, 692 N.E.2d 198 (R.C. 319.16, issuing a county-treasury warrant); *Bossa*, 64 Ohio St.2d at 276, 18 O.O.3d 461, 415 N.E.2d 256 (former R.C. 121.161 [now 124.13], computation of vacation leave for state employees); *Montrie Nursing Home*, 54 Ohio St.2d at 397, 8 O.O.3d 401, 377 N.E.2d 497 (1975 Am.Sub.H.B. No. 155, 136 Ohio Laws, Part I, 1603, 1683-1684, uncodified law specifying payment for vendor nursing-home care).

{¶ 18} The Volecks claim that R.C. 2744.01(G)(2)(c) supplies the requisite legal duty for the village to provide them with visually clean and chemically pure water. But that provision merely defines the term "proprietary function" for purposes of the Revised Code chapter on political subdivision tort liability. It imposes no separate duty on the village that is cognizable in mandamus.

{¶ 19} Finally, for the Volecks' claim that the village's purported breach of contract to provide water to them constitutes an unconstitutional taking, it is true that mandamus is the appropriate action to compel public authorities to institute appropriation proceedings when an involuntary taking of private property is alleged. *State ex rel. Gilbert v. Cincinnati*, 125 Ohio St.3d 385, 2010-Ohio-1473, 928 N.E.2d 706, ¶ 14. The Volecks, however, disclaim any entitlement to an appropriation proceeding to compensate them for an alleged taking. Thus, they are not entitled to a writ of mandamus for the claimed taking.

### Conclusion

{¶ 20} Therefore, based on the foregoing, the Volecks have not established their entitlement to the requested extraordinary relief in mandamus. They have not established a clear legal duty on the part of the village to provide

them with water of better quality than that required by the Safe Drinking Water Act, and they have an adequate remedy in the ordinary course of law by either the administrative procedure set forth in R.C. 6111.09 and Chapter 3745 or a breach-of-contract action in the common pleas court. We affirm the judgment of the court of appeals denying the writ.

Judgment affirmed.

BROWN, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Luper, Neidenthal & Logan, Luther L. Liggett Jr., and Heather Logan Melick, for appellants.

Baker, Dublikar, Beck, Wiley & Mathews, James F. Mathews, and Melissa Day, for appellee.

_____