[Cite as *Mathews v. E. Pike Local School Dist. Bd. of Edn.*, 2013-Ohio-4437.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| GEORGE L. MATHEWS, | : | |
| | : | |
| Plaintiff-Appellant, | : | |
| | : | Case No. 12CA831 |
| v. | : | |
| | : | |
| EASTERN PIKE LOCAL SCHOOL | : | |
| DISTRICT BOARD OF | : | DECISION AND |
| OF EDUCATION, et al., | : | JUDGMENT ENTRY |
| | : | |
| Defendants-Appellees. | : | Released: 09/25/2013 |

APPEARANCES:

William S. Cole and Joseph D. Kirby, Jackson, Ohio, for appellant.

Ryan M. LaFlamme, ENNIS, ROBERTS & FISCHER, Cincinnati, Ohio, for appellees.

Hoover, J.

{¶ 1} This is an appeal from a judgment of the Pike County Court of Common Pleas ruling: (1) appellant George L. Mathews and appellees Eastern Local Board of Education, et al., entered into a settlement agreement and the provisions of such agreement should be enforced; and (2) cross-appellant Attorney F. Harrison Green is entitled to the enforcement of a charging lien in the amount of $35,000.00 against the settlement proceeds.

{¶ 2} The trial court ruled in favor of appellees' "Motion to Enforce Settlement Agreement," determining that a settlement had been reached at a settlement conference. The issue regarding the charging lien is being appealed in case no. 12CA832. In this case, we will address the issue of whether or not to enforce the settlement agreement. For the following reasons, the judgment of the trial court is affirmed.

{¶ 3}  Appellant sets forth one assignment of error:

1. THE TRIAL COURT ERRED WHEN IT ADOPTED THE

SETTLEMENT AGREEMENT PROPOSED BY APPELLEE AS THERE

WAS NOT A MEETING OF THE MINDS AND THE TRIAL COURT'S

ORDER IS NOT SUPPORTED BY THE LAWS OF CONTRACT.

I. FACTS

{¶ 4}  On May 11, 2010, appellant filed a complaint against the Eastern Local School District, its individual board members, the superintendent, the transportation director, and the parents of children who allegedly made false statements concerning his conduct as a school bus driver.  The complaint alleged the following causes of action: 1) Sex discrimination, 2) Intentional Infliction of Emotional Distress, 3) Defamation of Character-Slander Per Se, 4) Negligent Infliction of Emotional Distress, 5) Breach of Contract, 6) False Light, 7) and Damages.  On December 22, 2010, appellees filed a motion for summary judgment, which was subsequently granted.  Shortly thereafter, the parties reached an agreement to mediate the matters with a private mediator.  By agreement of the parties, the trial court's grant of summary judgment was later vacated on February 23, 2012.

{¶ 5}  The parties began mediation in January 2011.  Attorney F. Harrison Green represented the appellant and Attorneys Ryan LaFlamme and Bronston McCord represented the school board and its members. At an April 2011 status conference, Attorney Green reported the following to the trial court:

This is Harrison Green. On January 19th or the 18th—uh, we began mediation with—on behalf of the Plaintiff and the School Board, and we have reached—I think uh, the School Board attorneys would agree—the parameters of an agreement…There's some issues on how to handle (inaudible) portion of that agreement regarding the pension…that has been difficult to resolve, and that's why Plaintiff did not respond to the –what has been an outstanding Motion for Summary Judgment.

{¶ 6} At the status conference, Attorney Green represented, "I think if we're able to get this all done, and I think we're pretty close, uh, that uh, this case will probably be (inaudible) to all parties….I think we are close."

{¶7} After the April 2011 status conference, the parties participated in two different settlement conferences in June 2011 and August 2011. No written agreement was executed after either of the settlement conferences. At the June settlement conference, appellant signed a proposed agreement; but the appellees did not sign the proposed agreement. The proposed settlement agreement outlined provisions involving a lump sum settlement of $150,000.00, payment towards retirement, withdrawal of the employment discharge, and appellant's voluntary retirement. This written instrument was marked and has been referenced thereafter as "Exhibit B." Appellees rejected the proposed settlement agreement because the retirement contributions were based upon a proposed salary of $45,000.00 per year for the period of May 12, 2009 through June 30, 2011. Appellees believed that the $45,000.00 figure was too high since appellant had only received a salary of $35,298.60 for the 2007-2008 school year and $37,001.00 for the 2008-2009 school year.

{¶ 8}  Appellees contend that a settlement agreement was reached between the parties at the August 2011 settlement conference.  However, the parties did not memorialize the agreement by having the parties sign a memorandum of agreement at the settlement conference.  The parties did not read into the record the purported settlement agreement for the trial court to review and adopt as a court order.  All discussions were held entirely off the record; and neither party sought to formally note any of the terms of the purported agreement before the trial court.  However, Attorney Green entered the trial court's chambers and shook Attorney LaFlamme's hand representing that an agreement had been made.

{¶ 9}  Attorney Green then sent an email to Attorney Bronston McCord at 4:08 PM on August 23, 2011 stating:

Bronston,

In accordance with the terms worked out by Ryan [LaFlamme] and myself, please find attached a proposed Agreement that I believe will be signed by Mr. Mathews.  I have included some simple language to acknowledge that this is a release of all claims of the parties through the date of execution.  It is understood that Mr. Mathews may have a potential claim as work related injuries, but it is outside the ability of our parties to agree to claims against a state fund such as BWC.

Please advise as soon as possible.  I believe we need to move fast while Mr. Mathews is in agreement.

Thanks again for yours and Ryan's help in resolving this matter.

Best Regards,

Harrison

The settlement agreement contained a provision regarding retirement contributions and the additional language referenced in Attorney Green's email.  This proposed settlement agreement was marked and has been referenced thereafter as "Exhibit A."

{¶ 10}  The important differences between the two proposed agreements are as follows.  Exhibit B stated:

> WHEREAS, Mr. Mathews and the Defendants now desire to reach a complete and final settlement of any and all differences that exist or that may exist between them; and***
>
> &
>
> 4.      In exchange for Mr. Mathews' agreement and compliance with all the terms herein and his execution for this Settlement Agreement and General Release, the District shall pay to the Ohio Public Employees Retirement System the amount of compensation for credit to Mr. Mathews' account for the period of May 12, 2009 through June 30, 2011 that is the District's contribution and Mr. Mathews' contribution based upon the proposed earnings of $45,000 per annum for Mr. Mathews during this period.

The corresponding sections of Exhibit A stated:

> WHEREAS, Mr. Mathews and the Defendants now desire to reach a complete and final settlement of any and all difference that exist or that may exist between them *as to claims*; and***(Emphasis Added)
>
> &

4       In exchange for Mr. Mathews' agreement and compliance with all the terms herein and his execution of this Settlement Agreement and General Release of all claims between the parties through the date of execution of this Agreement, the District shall pay to the Ohio Public Employees Retirement System the amount of compensation for credit to Mr. Mathews' account for the period of May 12, 2009 through June 30, 2011 that is the District contribution and Mr. Mathews' contribution based upon the earning for the academic year 2009-2010 of $38,851.10 and for the academic year 2010-2011 of $40,793.60 for Mr. Mathews during this period.

As noted, the differences are the inclusion of the words "as to claims" in the first section and the different salary basis for retirement contribution in term number 4 in Exhibit A.

{¶ 11} Appellant refused to sign Exhibit A claiming he did not want to end his level four (4) arbitration grievance procedure. He further testified that Attorney Green did not have his authority to enter the judge's chambers and settle the case. Appellant subsequently sought new counsel to represent him. Appellees filed a motion to enforce the settlement agreement of the August conference and Attorney Green filed a motion for a judgment lien against the settlement for attorney's fees. An evidentiary hearing on both motions was held in February 2012.

{¶ 12} The trial court ruled in appellees' favor and enforced the settlement agreement which was reduced to writing as Exhibit A; the trial court further awarded a judgment lien in favor of Attorney Green in the amount of $35,000.00. Appellant timely filed this appeal of the trial court's judgment enforcing the settlement agreement.

## II. ANALYSIS

{¶ 13} In his sole assignment of error, appellant claims that the trial court erred in enforcing the settlement agreement. Appellant contends that there was no meeting of the minds and that the agreement is invalid under the laws of contract. Appellant argues that a contract does not exist between the two parties because the specific terms were not agreed to by all parties. Furthermore, appellant testified before the trial court that he did not authorize Attorney Green to enter into a settlement agreement. Appellant has also argued that Attorney LaFlamme did not have authority from the Eastern Local Board of Education to enter into a settlement agreement.

### A. Standard of Review

{¶ 14} "The standard of review applicable to a ruling on a motion to enforce a settlement agreement depends upon the issues disputed, and may present a mixed question of law and fact." *Barstow v. O.U. Real Estate, III, Inc.*, 4th Dist. No. 01CA49, 2002-Ohio-4989 ¶ 36. "If the dispute is an evidentiary one, we will not reverse the trial court's determination that a settlement exists as long as the trial court had sufficient evidence before it as to the terms of the settlement." *Id.*, citing *Chirchiglia v. Ohio Bur. of Workers' Comp.*, 138 Ohio App.3d 676, 679, 742 N.E.2d 180 (2000). If the dispute is a question of law, we must employ a de novo review to determine whether the trial court's decision to enforce the settlement agreement is based upon an erroneous standard or a misconstruction of the law. *Barstow* at ¶ 36, citing *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431(1996).

### B. Attorney Authority

{¶ 15} "Absent specific authorization, an attorney has no implied or apparent authority to compromise and settle his client's claims." *Morr v. Crouch*, 19 Ohio St.2d 24, 294 N.E.2d 780 (1969). "Whether a party authorized the attorney to settle the case on certain terms is a question of fact, the resolution of which by the trial court shall not be disturbed on appeal if supported by some competent, credible evidence." *Schalmo Builders, Inc. v. Zama,* 8th Dist. No. 90782, 2008-Ohio-5879 ¶ 17, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578, at the syllabus.

{¶ 16} According to appellant, Attorney Green did not have authority to enter the trial court judge's chambers at the August conference and indicate that a settlement had been reached. Attorney Green testified and disputed this claim. Attorney Green insisted that appellant gave him authority to indicate that a settlement had been reached. The trial court found that Attorney Green possessed authority to enter into a settlement agreement expressed by Exhibit A. Given our standard of review, we defer to the trial court's conclusion that Attorney Green had actual authority to settle the case on behalf of appellant. We find that some competent, credible evidence was presented to support the trial court's conclusion. We will now address the issue of whether or not Attorney LaFlamme possessed actual authority from the Eastern Local Board of Education.

{¶ 17} In his reply brief, appellant argued that not only did his former attorney not have authority to settle his case, but the attorneys for the Board of Education did not as well. This argument was reiterated at oral arguments; and the parties were ordered to file briefs on the issue. Appellant argues that the Board never authorized a settlement and that adopting the agreement constitutes a violation of Ohio's Open Meetings Act.

Appellees argue that, while a contract must be approved by a board of education in an open meeting, a school board is able to negotiate a contract through its representatives.

{¶ 18} Appellant puts forth the argument that the Board could not have delegated its power to enter into an agreement, either with its attorney or without holding a public meeting ratifying the agreement. We do not find that the Eastern Local Board of Education took any action that was illegal or inappropriate. The Board was represented by Attorney LaFlamme who negotiated on their behalf.

The Ohio Supreme Court has stated:

While R.C. 121.22(G)(3) permits a governmental body to privately discuss litigation, the statute expressly invalidates any resolution, rule or formal action adopted in the closed session unless the resolution, rule or formal action is adopted in an open meeting. *See* R.C. 121.22(H). Thus, once a conclusion is reached regarding pending or imminent litigation, the conclusion is to be made public, even though the deliberations leading to the conclusion were private.

*State ex rel. Findlay Publishing Co. v. Hancock Cty. Bd. of Commrs*., 80 Ohio St.3d 134, 138, 684 N.E.2d 1222 (1997).

{¶ 19} In this case, Attorney LaFlamme was negotiating on behalf of the Eastern Local Board of Education. The Eastern Local Board of Education is not arguing that Attorney LaFlamme did not have authority to negotiate on behalf of the Board. Therefore, we must assume that if this appeal had not been filed, then the Board would have had a public meeting wherein it would have ratified or approved the settlement agreement. Because the appeal was filed regarding the validity of the settlement

agreement, the "conclusion" has not yet been reached "regarding pending" litigation. This Court currently is making the decision whether or not the proposed settlement agreement should be enforced. If the settlement agreement is to be enforced, then at that time the "conclusion is to be made public, even though the deliberations leading to the conclusion were private."

{¶ 20} The trial court found that the appellant's arguments were inconsistent with the documents, statements of both attorneys involved in the negotiations and settlement, and with good faith dealings between the parties and between appellant and Attorney Green. Everyone involved, with the exception of appellant, seems to agree that a settlement agreement was reached. Therefore, even though appellant is raising the question of Attorney LaFlamme's authority to settle the case, the more pertinent question is whether appellant authorized Attorney Green to settle his case. Again considering our standard of review, there is no evidence presented that we should overturn the trial court's determination that both attorneys had authority from the respective parties. We uphold the trial court's determination that Attorney LaFlamme possessed authority from the Board to negotiate a settlement with appellant. Accordingly, we move on to address whether an agreement was actually reached.

C. Settlement Agreement

{¶ 21} A settlement agreement is a contract designed to prevent or end litigation. *Continental W.* at 502. Settlement agreements are highly favored as a means of resolving disputes. *State ex rel. Wright v. Weyandt*, 50 Ohio St.2d 194, 197, 363 N.E.2d 1387 (1977). A trial court possesses full authority to enforce a settlement agreement

voluntarily entered into by the parties. *Mack v. Polson Rubber Co.*, 14 Ohio St.3d 34, 36, 470 N.E.2d 902 (1984).

{¶ 22} It is preferable that a settlement be memorialized in writing. *Pawlowski v. Pawlowski*, 83 Ohio App.3d 794, 798–799, 615 N.E.2d 1071(1992). However, an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract. *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 39, 285 N.E.2d 324 (1972). Terms of an oral contract may be determined from "words, deeds, acts, and silence of the parties." *Rutledge v. Hoffman*, 81 Ohio App. 85, 75 N.E.2d 608 (1947), paragraph one of the syllabus; *see also Ford v. Tandy Transp., Inc.*, 86 Ohio App.3d 364, 380, 620 N.E.2d 996 (1993).

{¶ 23} "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976). A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991).

{¶ 24} "To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear," and if there is uncertainty as to the terms then the court should hold a hearing to determine if an enforceable settlement exists. *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376, 377, 683 N.E.2d 337 (1997). A court cannot make a contract for the parties or force them to settle. *Listinger Sign Co. v. American Sign Co.*,

11 Ohio St.2d 1, 14, 227 N.E.2d 609 (1967). If the court cannot determine from the parties' manifestations as reasonably interpreted in the light of all the circumstances, what the agreement is or how to enforce it, no enforceable obligation exists. *Id.,* citing 1 Corbin on Contracts, 394 and 398, Section 95.

{¶ 25} The trial court concluded that Exhibit A represented the settlement agreement entered into by the parties in August 2011. Specifically, the court found appellant's arguments to be "inconsistent with the documents, ***inconsistent with the statements of both attorneys involved in the negotiations and settlement, and appear also to be inconsistent [with] the good faith dealings between the parties and between the Plaintiff and his own attorney F. Harrison Green."

{¶ 26} Here appellant argues that the trial court erred in ruling that the parties entered into a settlement agreement. According to appellant, the settlement negotiations in August 2011 concluded with confusion as to what the agreement was or if it existed at all. Appellant also states that he never saw Exhibit A before or during the settlement conference. It is the position of appellant that Exhibit A and Exhibit B differed significantly; therefore, any agreement to Exhibit B is inconsequential to his agreement to Exhibit A. Furthermore, appellant argues that he did not authorize his attorney to enter into the settlement agreement submitted as Exhibit A.

{¶ 27} Appellees argue that appellant is not credible in his arguments and that the trial court correctly enforced a certain and clear agreement. They contend that all the parties' actions clearly expressed their intent to be bound by the settlement agreement submitted as Exhibit A. In contrast to appellant's position, appellees believe that the differences in Exhibit B and Exhibit A are insignificant. Appellees believe that any

differences were to the benefit of appellant. Therefore, appellees argue that appellant's agreement to Exhibit B undermines his contention that the terms were not clear. It is also appellees' position that appellant is unable to cite any action which he intended to carry forward, undermining his argument that he never agreed to the "as to claims" language in Exhibit A.

{¶ 28} Appellees point out that his own former counsel, Attorney Green, contradicts appellant's arguments. Appellees also contend that the parties acted in custom with settlement negotiations, agreeing to an oral understanding then later reducing it to writing. Appellees state that appellant provides no evidence of fraud, duress, or undue influence, meaning he is unable to unilaterally repudiate the agreement.

{¶ 29} The issue before this court is whether the trial court correctly ruled to enforce the settlement agreement memorialized as Exhibit A. We believe it did, because, although the parties may have been careless with the handling of the negotiations, we defer to the trial court's factual determination that appellant authorized his attorney to settle the case and the parties entered into the agreement represented in Exhibit A. The trial court held an evidentiary hearing pursuant to *Rulli*. The dispute here is evidentiary in nature; thus, we will apply the deferential standard of review rather than the de novo standard of review. Therefore, we affirm the determination of the trial court that sufficient evidence existed as to the terms of the agreement.

{¶ 30} The facts of this case come from two main sources, appellant and his discharged attorney, Mr. Green. It appears that appellant did sign Exhibit B; and we agree with the trial court's determination that it only slightly differs from Exhibit A. The trial court also pointed out that appellant authorized a proposal; although he "hoped and

prayed" it would not be accepted.  This statement undermines appellant's position that the trial court erred when it found a settlement existed.

{¶ 31}  This Court is quite aware of the troublesome history of this case, as this appeal might have been avoided if the settlement terms had been read into the record or had been memorialized in a memorandum entry.  Nevertheless, the trial court took the necessary steps to gather evidence and conclude in a lengthy and detailed opinion that the attorneys for the parties had authority to act for their respective clients.  We believe that the attorneys entered into the settlement agreement under that authority.  We decline to overturn the trial court's rulings regarding the authority issues and the enforcement of the settlement agreement based upon the deferential standard of review.

## III.

## Conclusion

{¶ 32}  Appellant's sole assignment of error is overruled.  The settlement agreement, referenced as Exhibit A, shall be enforced between the parties.  The judgment of the trial court is affirmed.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and Abele, J.:  Concur in Judgment and Opinion.

For the Court


By:

Marie Hoover, Judge


**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.