[Cite as *Tackett v. Gunnels*, 2023-Ohio-3611.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

MICHELLE TACKETT,                          :

                          Plaintiff-Appellee,    :    Case
                          No.  22CA9

                          v.                     :

RYAN GUNNELS,                              :    DECISION AND
                          JUDGMENT ENTRY

                          Defendant-Appellant.    :

_____

APPEARANCES:

James R. Kingsley, Circleville, Ohio, for appellant.

Michelle Tackett, Chillicothe, Ohio, pro se appellee.
_____
CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:9-28-23
ABELE, J.

{¶1}  This is an appeal from a Ross County Common Pleas
Court judgment that adopted a second-amended-shared-parenting
plan between Michelle Tackett, plaintiff below and appellee
herein, and Ryan Gunnels, defendant below and appellant herein.
Appellant assigns the following errors for review:

>       FIRST ASSIGNMENT OF ERROR:
>
>       "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR
>       WHEN IT FAILED TO HOLD A HEARING ON THE
>       TERMS OF THE AGREEMENT AND INSTEAD DID IT BY
>       SUBMISSION."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR
WHEN IT JOURNALIZED THE PURPORTED IN-COURT
SETTLEMENT."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR
WHEN IT FAILED TO FIND NO MEETING OF THE
MINDS AND REMANDING THE CASE FOR HEARING ON
ALL PENDING MOTIONS."

{¶2} The present appeal stems from a long and contentious shared-parenting battle between the divorced parents of two children. The parties' first shared-parenting plan was entered as part of their 2014 Florida divorce proceedings. Later, the parties relocated to Ohio, and, in August 2017, the Pike County Common Pleas Court entered an amended-shared-parenting plan.

{¶3} Subsequently, numerous disputes ensued and the parties filed multiple motions seeking to enforce, or to challenge, the amended-shared-parenting plan. On June 12, 2020, the trial court scheduled all pending motions for a hearing to be held in August 2020. In the meantime, appellant filed another contempt motion. Also, appellee filed a notice that she intended to relocate to Chillicothe. Thereafter, the parties agreed to transfer the case to Ross County and the parties again filing a

ROSS, 22CA9

parade of motions over the shared parenting of their two children.

{¶4} On August 18, 2021, the magistrate held a final hearing to resolve "all pending motions." At the start of the hearing, appellant's counsel explained that the parties had spent more than six hours negotiating and had finally reached an agreement on all pending matters. Counsel then recited the terms of the agreement.

{¶5} Counsel first indicated that rather than a review of multiple shared-parenting plans, he planned "to merge everything into one document," to be called the second-amended-shared-parenting plan. Counsel explained that to create this second-amended-shared-parenting plan, he would "take the original shared parenting plan from Judge Deering," (i.e., the Pike County amended-shared-parenting plan) and "copy it as close as" possible. He recognized, however, that some provisions "are now obsolete," so he would delete any obsolete provisions, like one provision that referenced a child turning "eight years of age," which had already occurred.

{¶6} Counsel further indicated that the parties' "major agreement" relates to "parenting time and scheduling." He reported that the parties agreed "that the original agreement of the part[ies] is fifty-fifty as closely as possible every month

ROSS, 22CA9

except they are now going to trigger, uh, every other weekend, uh, from Friday at six to Sunday at six." Counsel explained that appellant's work schedule may make him late to pick up the children, so the parties agreed he would have until Friday at 8:00 p.m. to pick up the children. If he is unable to pick up the children by 8:00 p.m., then "he forfeits that evening" and his time begins Saturday morning at 9:00. The parties also agreed to "a new clause" for appellant's "compensatory visitation" if he has conflicts during his parenting-time weekends. Counsel explained that the parties agreed that appellant would "be entitled to compensatory visitation" for the time lost and appellant would be able to exercise that compensatory visitation "during the week within the next ninety days."

{¶7} Counsel also stated that the parties agreed "to look at and incorporate part of the Chillicothe companionship schedule" with a couple of modifications. First, for Christmas, the parties agreed to divide Christmas break into two phases. The first phase would begin the first day that school releases for the holiday and extend until 12:00 p.m. on December 25. The second phase would begin at 12:00 p.m. on December 25 and extend until the day before school resumes. The parties agreed to alternate these two time periods each year.

{¶8} For Thanksgiving, the parties agreed that parenting time would begin the day school releases for the holiday and continue through the day that school resumes. They also agreed to alternate the holiday each year. Counsel indicated that the "old schedule[]" is "going to remain in effect for the other holidays" and for the children's birthdays.

{¶9} Appellee's counsel then offered some clarifications. With regard to appellant's "compensatory time," the parties agreed that appellant would not exercise "it during [appellee's] weekend time." She further related that the parties agreed that the holidays would be "the standard schedule" except for Thanksgiving and Christmas. Counsel stated that the parties agreed to use "the old rule for the child[ren]'s birthday and the old rule for Mother's Day and Father's Day[.] Aside from that," the parties agreed to use "the standard schedule, which is going to just rotate." Appellant's counsel stated that he "concur[red]."

{¶10} After the parties' attorneys finished reciting the agreement on the record, appellee's counsel asked appellee if she understood (1) the changes the parties agreed to make and (2) the provisions the parties did not agree to amend would remain the same. Appellee responded affirmatively. She further

confirmed that the changes that the parties agreed to make are in the children's best interests.

{¶11} Appellant's counsel asked appellant if he (1) understood "each and every one of the, uh, settlements that we, uh, terms that we have entered into," (2) thought the terms "are fair, just and reasonable," and (3) wanted the court to adopt the parties' agreement. Appellant confirmed his understanding.

{¶12} At that juncture, the magistrate stated that "the court will approve and adopt, uh, the agreement that you reached here today and the – the terms of which were recited into our record, uh, so your agreement will now become a court order." At the conclusion of the hearing, appellant's counsel asked whether they could do "an agreed judgment entry," but the magistrate stated they needed "a separate magistrate's decision." Appellant's counsel said he would "prepare the necessary documents," i.e., "the magistrate's decision, judgment entry and the * * * second amended shared parenting plan."

{¶13} Not surprisingly, events did not unfold quite as predicted. Instead, on September 7, 2021 appellee filed a "second amended shared parenting plan." In an attached filing, appellee's counsel stated that she sent the plan to appellant's counsel on August 20, 2021, but counsel refused to respond and instead submitted his own plan.

ROSS, 22CA9

{¶14} On November 19, 2021, appellant filed a motion to enforce the August 18, 2021 in-court settlement that counsel read into the record. Appellant's counsel asserted that he sent a "Third Amended Shared Parenting Plan" to appellee's counsel on August 31, 2021, and, rather than a response, she filed her own plan.

{¶15} On November 19, 2021, the trial court held a telephonic status conference with the parties. The court noted that the parties previously had read into the record an agreed settlement, but "for some reason cannot now reach consensus on what the Amended Shared Parenting Plan should say, or even who should prepare it." The court recognized that appellant filed a motion to enforce this settlement agreement and thus ordered the parties to submit "a copy of their written memorandum of the settlement agreement within 7 days" and "a proposed amended shared parenting plan." The court stated it then would review "the parties' statement on the record of their agreement" and "issue a decision as to the terms of the settlement."

{¶16} On December 13, 2021, the trial court granted appellant's motion to enforce the settlement agreement. The court first noted that the parties filed a written "Memorandum Entry." The trial court, however, found that it contains "nothing more than the notes of counsel." The court thus found

"that the agreement read into the record is the entirety of the parties' agreement."

{¶17} The court found that the parties agreed to name the new shared parenting plan the "Second Amended Shared Parenting Plan" and this plan would "copy and retain the terms of the [Pike County] Amended Shared Parenting Plan," except as otherwise stated during counsels' in-court recitation of the parties' settlement agreement. The court noted that subsequently both parties submitted shared-parenting plans, but found that neither one comported with their in-court settlement agreement. Nonetheless, the court found that appellee's plan "most closely adheres to the agreed terms," and thus ordered appellee's counsel to prepare a new draft of the second-amended-shared-parenting plan with the following revisions:

> 1. * * * *
> 2. Save and excepting the specifically amended terms agreed upon by the parties, the language and terms of the plan shall be the same as (i.e. [sic] identical to) that contained in the prior Amended Plan for Shared Parenting.
> 3. The language submitted by Plaintiff for the new Time Sharing Schedule, which Plaintiff has submitted as Section VI.A., shall be amended as follows:
> a. It shall indicate that Father will send his Awarded Flight Schedule to Mother 'no later than the 22nd of each month...'
> b. It shall indicate that any compensatory time taken by Father 'will be taken during the weekdays only, and within 90 days from the date of Father's missed weekend parenting time.' * * * *

4. The Holiday Schedule, which Plaintiff has submitted as Section IV.B., shall be amended as follows:
a. The Christmas schedule shall be amended to note that the first half shall last 'until 12:00 p.m. on Christmas Day' and the second half 'commences 12:00 p.m. Christmas Day, December 25th until the day before school resumes at 6pm [sic].'
b. The provisions regarding Children's Birthdays * * * and Father's Day/Mother's Day * * * were retained by agreement and must be included.
c. The provision regarding parents' birthdays was not retained and must be removed.
d. The provision regarding alternating 'spring break...and any other recognized national holiday' shall be removed. The language regarding division of Halloween and trick-or-treat shall be retained.

{¶18} The trial court noted that the "Court's Standard Companionship Schedule" would govern the parents' birthdays, spring break, and other holidays not specifically included in the parties' in-court settlement agreement. The court ordered appellee's counsel to prepare a magistrate's decision and agreed judgment entry incorporating the agreed-upon second-amended-shared-parenting plan. The court also instructed the parties and their counsel to sign the second-amended-shared-parenting plan, the magistrate's decision, and the agreed judgment entry before submitting the documents to the court.

{¶19} Once again, however, events did not unfold as the trial court directed. Instead, on February 11, 2022 appellee's counsel filed a notice of filing for the second-amended-shared-parenting plan. She asserted that she sent the draft to

appellant's counsel, but counsel did not respond. Appellee's counsel indicated that she happened to see appellant's counsel and when asked about the parenting plan, appellant's counsel said he did not agree with the document and intended to object. Appellee's counsel asked counsel to respond with a list of his objections, but he apparently did not, nor did he file a response to appellee's February 11, 2022 filing.

{¶20} On March 1, 2022, the magistrate recommended that the court adopt the second-amended-shared-parenting plan. On that same date, the trial court adopted the magistrate's decision and the second-amended-shared-parenting plan. This appeal followed.

I

{¶21} In his first assignment of error, appellant asserts that the trial court erred by failing to hold a hearing regarding his motion to enforce the in-court settlement agreement. Appellant asserts that the court should have held a hearing to resolve the parties' disagreements as documented in their competing amended-shared-parenting plans, rather than resolving the matter upon the parties' written submissions. He contends that if the trial court had concluded an evidentiary hearing, the court would have adopted an amended-shared-parenting agreement that allocated the federal-tax-dependency exemption for both children to appellant.

{¶22} If "parties dispute the meaning or existence of a settlement agreement, a court may not force an agreement upon the parties." *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 377, 683 N.E.2d 337 (1997). Forcing an agreement upon the parties "would be to deny the parties' right to control the litigation, and to implicitly adopt * * * the interpretation of one party, rather than enter judgment based upon a mutual agreement." *Id.* Consequently, when "the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." *Id.* at syllabus. However, "[i]n the absence of such a factual dispute, a court is not required to conduct such an evidentiary hearing." *Id.* at 377. We hasten to add, however, that a party may waive the right to an evidentiary hearing if the party fails to request a hearing. *In re K.K.*, 4th Dist. Highland No. 21CA1, 2021-Ohio-3338, ¶ 40-41; *Aceste v. Stryker Corp.*, 6th Dist. Lucas No. L-19-1166, 2020-Ohio-4938, ¶ 48, citing *Wilson v. Wilson*, 2018-Ohio-3820, 111 N.E.3d 110, ¶ 21 (6th Dist.) ("If a trial court does not hold the required hearing, an appellant nonetheless waives this error for purposes of appellate review where '[t]he record shows no indication that appellant requested an evidentiary hearing or objected to the nature of the

ROSS, 22CA9

proceedings.'"); *Brahm v. DHSC, LLC*, 2019-Ohio-766, 132 N.E.3d 266, ¶ 58 (5th Dist.).  Moreover, under the invited-error doctrine, litigants may not "take advantage of an error which [they themselves] invited or induced." *State v. Garrett*, ___ Ohio St.3d ___, 2022-Ohio-4218, ___ N.E.3d ___, ¶ 20, quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co., Lincoln-Mercury Div.*, 28 Ohio St.3d 20, 502 N.E.2d 590 (1986), paragraph one of the syllabus.  For example, a party invites error "'when a party has asked the court to take some action later claimed to be erroneous, or affirmatively consented to a procedure the trial judge proposed.'"  *Id.*, quoting *State v. Campbell*, 90 Ohio St.3d 320, 324, 738 N.E.2d 1178 (2000).

{¶23} In the case sub judice, it appears that appellant did not affirmatively request the trial court to conduct an evidentiary hearing regarding the terms of the parties' agreement.  Instead, the motion to enforce the in-court settlement agreement states that "memorandums of counsel [should be] submitted as to the accuracy of their submissions." Moreover, when the court ordered the parties to submit their copies of the written memorandums and proposed amended-shared-parenting plans, it stated it would review the documents and then "issue a decision as to the terms of the settlement." Appellant did not object to this procedure, but rather requested

ROSS, 22CA9

and complied with it.  Under these circumstances, we believe that appellant waived the right to argue on appeal that the trial court should have held an evidentiary hearing.

{¶24} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

## II

{¶25} In his second assignment of error, appellant asserts that the trial court erred by adopting the second-amended-shared-parenting plan because the plan does not reflect the terms of the parties' in-court settlement.

## A

{¶26} Before we consider appellant's assignments of error, we first observe that appellant did not object to the magistrate's decision that recommended the court adopt the second-amended-shared-parenting plan.  Civ.R. 53(D)(3)(b)(iv) provides that

> a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

"In essence, the rule is based on the principle that a trial court should have a chance to correct or avoid a mistake before

ROSS, 22CA9

its decision is subject to scrutiny by a reviewing court."
*Cunningham v. Cunningham*, 4th Dist. Scioto No. 01CA2810, 2002-
Ohio-4094, ¶ 8.  If a party fails to comply with Civ.R.
53(D)(3)(b)(iv), appellate review is limited to plain error.
Civ.R. 53(D)(3)(b)(iv); *Barnett v. Barnett*, 4th Dist. Highland
No. 04CA13, 2008-Ohio-3415, ¶ 17; *see also State ex rel. Target
Auto Repair v. Morales*, 168 Ohio St.3d 88, 2022-Ohio-2062, 195
N.E.3d 1027, ¶ 15; *State ex rel. Booher v. Honda of Am. Mfg.*, 88
Ohio St.3d 52, 53-54, 723 N.E.2d 571 (2000).

**{¶27}** In the case sub judice, appellant did not object to
the magistrate's decision.  However, the magistrate's decision
did not advise appellant that a party cannot assign as error the
court's adoption of any factual finding or legal conclusion
unless the party timely and specifically objected to that
finding or conclusion.  *See* Civ.R. 53(D)(3)(a)(iii).  The rule
requires a magistrate's decision to include conspicuous language
to inform parties of this process.[1]  *Picciano v. Lowers*, 4th

---

[1] Civ.R. 53(D)(3)(a)(iii) states:

> Form; Filing, and Service of Magistrate's
> Decision.  A magistrate's decision shall be in
> writing, identified as a magistrate's decision in
> the caption, signed by the magistrate, filed with
> the clerk, and served by the clerk on all parties
> or their attorneys no later than three days after
> the decision is filed.  A magistrate's decision
> shall indicate conspicuously that a party shall not

ROSS, 22CA9

Dist. Washington No. 08CA38, 2009-Ohio-3780, ¶ 17; *Rockey v. Rockey*, 4th Dist. Highland No. 08CA4, 2008-Ohio-6525, ¶ 9. If a magistrate's decision does not comply with Civ.R. 53(D)(3)(a)(iii), then a party may assign as error the trial court's adoption of the magistrate's findings of fact and conclusions of law. *Rockey* at ¶ 12; *see also D.A.N. Joint Venture III, L.P. v. Armstrong*, 11th Dist. Lake No.2006-L-89, 2007-Ohio-898, ¶ 22. Consequently, appellant's failure to object to the magistrate's decision in the case at bar does not preclude him from challenging the trial court's decision adopting the magistrate's decision and the second-amended-shared-parenting plan.[2]

**{¶28}** We question, however, whether appellant's failure to respond to or to object to appellee's February 11, 2022 filing

assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).

[2] We note that during the August 18, 2021 hearing, the parties discussed the 14-day rule for objecting to a magistrate's decision. The transcript suggests that they may have intended to "waive the fourteen-day objection period" and to document this waiver in the magistrate's decision. However, the magistrate's decision does not, in fact, contain this waiver.

that contained notice of the second-amended-shared-parenting plan and the difficulty encountered when seeking appellant's counsel's approval forfeited any error with the court's subsequent adoption of that plan. Appellant could have responded to appellee's filing by setting forth objections he now raises on appeal so that the trial court first could have considered these issues and corrected any arguable errors. But he did not. Thus, a few weeks later the court adopted the second-amended-shared-parenting plan that appellee submitted. In light of these circumstances, we believe that appellant forfeited the right to challenge on appeal the trial court's decision to adopt the second-amended-shared-parenting plan. We thus limit our review of the court's decision to adopt the second-amended-shared-parenting plan for plain error.

{¶29} In order for the plain-error doctrine to apply, a party who claims error must establish that (1) "'an error, i.e., a deviation from a legal rule'" occurred, (2) the error was "'an "obvious" defect in the trial proceedings,'" and (3) this obvious error affected substantial rights, i.e., the error "'must have affected the outcome of the trial.'" *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209, 436

ROSS, 22CA9

N.E.2d 1001, 1003 (1982) ("A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings."). For an error to be "plain" or "obvious," the error must be plain "under current law" "at the time of appellate consideration." *Johnson v. United States*, 520 U.S. 461, 467, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *accord Barnes*, 94 Ohio St.3d at 27; *State v. G.C.*, 10th Dist. Franklin No. 15AP-536, 2016-Ohio-717, ¶ 14. However, the plain-error doctrine is not readily invoked in civil cases. Instead, an appellate court "must proceed with the utmost caution" when applying the plain-error doctrine in civil cases. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). The Ohio Supreme Court has set a "very high standard" for invoking the plain-error doctrine in a civil case. *Perez v. Falls Financial, Inc.*, 87 Ohio St.3d 371, 721 N.E.2d 47 (2000). Thus, "the doctrine is sharply limited to the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss*, 79 Ohio St.3d at 122;

*accord Jones v. Cleveland Clinic Found.*, 161 Ohio St.3d 337, 2020-Ohio-3780, 163 N.E.3d 501, ¶ 24; *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, ¶ 43. Moreover, appellate courts "'should be hesitant to decide [forfeited errors] for the reason that justice is far better served when it has the benefit of briefing, arguing, and lower court consideration before making a final determination.'" *Risner* at ¶ 28, quoting *Sizemore v. Smith*, 6 Ohio St.3d 330, 332, 453 N.E.2d 632 (1983), fn. 2; *accord Mark v. Mellott Mfg. Co., Inc.*, 106 Ohio App.3d 571, 589, 666 N.E.2d 631 (4th Dist.1995) ("Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process."). Additionally, "[t]he plain error doctrine should never be applied to reverse a civil judgment * * * to allow litigation of issues which could easily have been raised and determined" in the trial court. *Goldfuss*, 79 Ohio St.3d at 122.

B

**{¶30}** Settlement agreements are highly favored as a means of resolving disputes. *Barstow v. O.U. Real Estate, III, Inc.*, 4th Dist. Athens No. 01CA49, 2002-Ohio-4989, ¶ 37; *State ex rel. Wright v. Weyandt*, 50 Ohio St.2d 194, 197, 4 O.O.3d 383, 363 N.E.2d 1387 (1977). The essential elements of a settlement agreement, like any contract, "'include an offer, acceptance,

ROSS, 22CA9

contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'" *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D. Ohio 1976). "'To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear.'" *Id.* at ¶ 17, quoting *Rulli*, 79 Ohio St.3d at 376. A trial court possesses full authority to enforce a valid settlement agreement. *Kostelnik* at ¶ 16; *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134; *Mack v. Polson Rubber Co.*, 14 Ohio St.3d 34, 36, 470 N.E.2d 902 (1984).

**{¶31}** Although settlement agreements may be either written or oral, written agreements are "preferable." *Kostelnik* at ¶ 15; *Huffman v. Huffman*, 4th Dist. Washington No. 21CA13, 2022-Ohio-2020, ¶ 11; *Mathews v. E. Pike Loc. Sch. Dist. Bd. of Edn.*, 4th Dist. Pike No. 12CA831, 2013-Ohio-4437, ¶ 22, citing *Pawlowski v. Pawlowski*, 83 Ohio App.3d 794, 798-799, 615 N.E.2d 1071 (10th Dist. 1992). Oral settlement agreements nevertheless are enforceable if the record demonstrates "sufficient particularity to form a binding contract." *Kostelnik* at ¶ 15, citing *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36,

ROSS, 22CA9

39, 285 N.E.2d 324 (1972). "Terms of an oral contract may be determined from 'words, deeds, acts, and silence of the parties.'" *Id.*, *quoting Rutledge v. Hoffman*, 81 Ohio App. 85, 75 N.E.2d 608, paragraph one of the syllabus (1947).

{¶32} Parties also may enter into an in-court settlement agreement. "An in-court agreement is one that occurs 'during the course of a hearing' and in the 'presence of the court.'" *Richmond v. Evans*, 8th Dist. Cuyahoga No. 101269, 2015-Ohio-870, ¶ 13, citing *Kolar v. Shapiro*, 11th Dist. Lake No. 2007-L-148, 2008-Ohio-2504, quoting *Booth v. Booth*, 11th Dist. Lake No.2002-P-0099, 2004-Ohio-524. When parties voluntarily enter into an oral settlement agreement in the presence of the court, the agreement constitutes an enforceable and binding contract. *Spercel* at paragraphs one and two of the syllabus*; Aristech Chem. Corp. v. Carboline Co.*, 86 Ohio App.3d 251, 254-255, 620 N.E.2d 258 (4th Dist.1993), citing *Bolen v. Young*, 8 Ohio App.3d 36, 37, 455 N.E.2d 1316 (10th Dist. 1982). Reading the terms of an in-court settlement agreement into the record allows a trial court to "'approve a journal entry which accurately reflects the terms of the agreement, adopting the agreement as [the court's] judgment.'" *Richmond* at ¶ 33, quoting *Bolen*, 8 Ohio App.3d at 37, citing *Holland v. Holland*, 25 Ohio App.2d 98, 266 N.E.2d 580 (10th Dist.1970); *see also Gulling v. Gulling*, 70 Ohio App.3d

410, 412, 591 N.E.2d 349 (9th Dist.1990) ("[a]n in-court settlement agreement may be adopted by the court, incorporated into judgment entry, and enforced even in the absence of written approval by one party.").

**{¶33}** Because a valid settlement agreement constitutes a binding contract, a party cannot unilaterally repudiate the agreement. *Spercel*, 31 Ohio St.2d at 39-40; *Cochenour v. Cochenour*, 4th Dist. Ross No. 13CA3420, 2014-Ohio-3128, ¶ 28. "To permit a party to unilaterally repudiate a settlement agreement would render the entire settlement proceedings a nullity, even though * * * the agreement is of binding force." *Spercel*, 31 Ohio St.2d at 40. Consequently, settlement agreements "'can only be set aside for the same reasons that any other contract could be rescinded, such as fraud, duress, or undue influence.'" *Barstow v. O.U. Real Estate, III, Inc.*, 4th Dist. Athens No. 01CA49, ¶ 38. Thus, "[i]n order to effect a rescission of a binding settlement agreement entered into in the presence of the court, a party must file a motion to set the agreement aside." *Spercel* at paragraph two of the syllabus. Otherwise, "a trial court may properly sign a journal entry reflecting the settlement agreement." *Id.*

**{¶34}** Furthermore, "[i]f the record clearly reflects that the parties intended to include a term in their settlement

agreement, the trial court does not have the discretion to adopt a judgment entry that unilaterally excludes or adds terms in a manner that would result in a settlement agreement that is inconsistent with the parties' agreement." *Santomauro v. Sumss Property Mgt., LLC*, 2019-Ohio-4335, 134 N.E.3d 1250, ¶ 55 (9th Dist.), citing *Cuyahoga Falls v. Wells*, 9th Dist. Summit No. 19959, 2001 WL 81260, *3 (Jan. 31, 2001). "It is reversible error for a trial court to adopt a judgment entry that fails to accurately reflect the entire settlement agreement." *Id.* at ¶ 45, citing *Schmid v. Rutter*, 9th Dist. Wayne No. 2505, 1989 WL 157218, *2 (Dec. 27, 1989).

**{¶35}** In the case at bar, appellant asserts that four parts of the second-amended-shared-parenting plan exclude or add terms that are inconsistent with the parties' in-court settlement agreement.

1

**{¶36}** First, appellant claims that the trial court erred when it found that the parties had not agreed to incorporate into the new shared-parenting plan (1) the original Florida shared-parenting plan, and (2) the Pike County amended-shared-parenting plan. He asserts that counsel "specifically stated on the record" that "the previous agreements were going to be merged into the latest" shared-parenting plan.

ROSS, 22CA9

{¶37} To support this argument, appellant cites to pages 4 and 18 of the hearing transcript but does not identify which statements purportedly contain this alleged agreement. Nonetheless, we have found nothing on those two pages that states the parties agreed to incorporate both the Florida and the Pike County plans into the new shared-parenting plan.  On page four, appellant's counsel stated he would "take the original shared parenting plan from Judge Deering here [i.e., the Pike County plan] and I'm going to copy it as close as I can."  On page 18, appellant's counsel asked appellant if he understood that "we have to put three things together" and then listed those three things as "the old shared parenting plan," "some of the new, uh, compensatory visitation or the * * * local schedule and the * * * amendments."  Counsel continued to explain that "we [will] put all those together and that's going to be a whole new scorecard from here on in."  None of these statements suggest that "the old shared parenting plan" meant the Florida plan.  Moreover, throughout the hearing the parties referred to the Pike County amended-shared-parenting plan as the "the old shared parenting plan."

{¶38} Thus, we do not believe that the record supports appellant's argument that the parties agreed to merge both the Florida shared-parenting plan and the Pike County amended-

ROSS, 22CA9

shared-parenting plan into the second-amended-shared-parenting plan. Instead, counsel stated that he would use the Pike County amended-shared-parenting plan to help draft the new plan, not that he would use the Pike County and the Florida plan to draft the new plan. Moreover, appellant does not point to anything in the record to suggest that appellee intended to incorporate the Florida plan into the new plan. We, therefore, find nothing in the record to support appellant's claim that the parties agreed to merge the two prior shared-parenting plans into the second-amended-shared-parenting plan. Thus, the trial court did not err by excluding the Florida shared-parenting plan's provisions when it adopted the second-amended-shared-parenting plan.

2

{¶39} Next, appellant asserts that the trial court erred by adopting the plan because it "contained provisions outside of those contained in previous shared parenting plans and which were not agreed to." In particular, appellant contends that he did not agree to (a) include a provision that he would give appellee 24 hours' notice if he is unable to pick up the children at his designated time, (b) delete a provision that allowed him to have the children on his birthday, and (c) omit a provision to allow tracking devices on the children's cell phones. Appellant points out that he is a pilot, and sometimes

ROSS, 22CA9

his flight is delayed, so he would not always be able to provide appellee 24 hours' notice.  He further asserts that the previous plans stated that he would have the children every year on his birthday, but under the new plan the court stated that the parties would follow the local rule.  Appellant also supposedly requested that tracking devices be placed on the children's cell phones.

a

{¶40} With respect to the 24-hour-notice provision, the agreement states that "[i]f [appellant] is unable to pick up the children [on] time, he must notify [appellee] at least twenty-four (24) hours prior."  The in-court agreement indicates that appellant consented to notify appellee if he would be late, but it is silent regarding the amount of notice that he agreed to provide. Therefore, we agree with appellant that the parties did not agree that appellant would provide appellee with 24 hours' notice if he would be late picking up the children.

{¶41} However, we do not believe that the trial court plainly erred by including this provision in the second-amended-shared-parenting plan.  Instead, the plan also includes a provision that states, "[t]he parents shall attempt to cooperatively resolve any disputes which may arise over the terms of the parenting plan."  If they are unable to agree, the

plan states that they shall attempt "mediation or other resolution methods * * * prior to filing a court action."  In view of this outlet to resolve disputes, we do not believe that the trial court obviously erred by including the 24-hour-notice provision in the second-amended-shared-parenting plan.

b

{¶42} Regarding the parents' birthdays, the record of the parties' in-court agreement does not indicate that they discussed parenting time on the parents' birthdays.  They did, however, agree to follow the local companionship schedule except for the Thanksgiving and Christmas holidays.  The record thus does not contain a specific agreement regarding the parents' birthdays.

{¶43} Arguably, however, because the parties agreed to retain the provisions from the Pike County amended-shared-parenting plan that they did not specifically discuss during the in-court settlement agreement, they agreed to retain the provision regarding the parents' birthdays.  Nonetheless, we again note that the parties have an outlet to resolve these types of issues.  Thus, we do not believe that the trial court obviously erred by excluding the provision that granted the parties parenting time on their birthdays.

c

ROSS, 22CA9

{¶44} With respect to tracking devices on the children's cell phones, the parties did not read anything into the record regarding tracking devices.  Therefore, although many positive benefits arise from tracking devices for mobile phones of minor children, we do not agree with appellant that the trial court erred by excluding this type of provision from the second-amended-shared-parenting plan.

{¶45} Next, appellant contends that the trial court erred by deleting the spring-break provision and by making it subject to the local rules, which states that "spring break commences 6:00 p.m. the Friday school is out to 7:00 p.m. the day before school commences."  Appellant asserts that the children's spring break begins on a Thursday and therefore, spring-break-parenting time should begin on Wednesday.

{¶46} Our review reveals that the parties did not recite into the record any specific agreements regarding spring break. Instead, they stated they would follow the local companionship schedule, except as otherwise noted.  Thus, the record does not contain any evidence that the parties agreed upon a specific spring-break schedule.  Consequently, the trial court did not err in this regard.

{¶47} Appellant further argues that the trial court erred by adopting a provision that did not give appellant "the final decision" to schedule his "weekday compensatory parenting time for missed weekends." He states that he did not agree to the provision that requires him to "discuss these makeup dates with [appellee] as the dates must be mutually agreed on."

{¶48} Our review of the record does not support appellant's argument that the parties agreed that appellant would have "the final say when" he could exercise his compensatory time. Instead, the only caveat that the parties recited into the record is that appellant could not exercise his compensatory time during a weekend when appellee had parenting time with the children. Thus, we do not agree with appellant that the trial court erred by adopting a plan that did not give him "the final say." However, we recognize that appellant's work schedule can be demanding, inflexible and subject to last-minute changes. Thus, the parties should endeavor to establish some method to accommodate each of their schedules when the situation demands it or, as the plan provides, "attempt mediation or other resolution methods" prior to any additional court action.

{¶49} In conclusion, we determined the trial court erred by adding the 24-hour-notice provision and, arguably, by excluding

a provision to grant each parent parenting time on their birthdays. However, any error that the trial court may have made does not constitute plain error that we must correct in order to avoid a miscarriage of justice. The record fails to support appellant's remaining assertions that the plan that the court adopted does not reflect the parties' in-court agreement.

{¶50} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

III

{¶51} In his third assignment of error, appellant asserts that the trial court erred by adopting the second-amended-shared-parenting plan as a reflection of the parties' in-court settlement agreement. He argues that, because each party submitted plans that differed from the terms of their in-court agreement, they did not have a meeting of the minds sufficient to form a valid agreement. Appellant reiterates his disagreements with the second-amended-shared-parenting plan that the court adopted: (1) he did not consent to "mutually" agree upon his compensatory time; (2) he is unable to give appellee 24 hours' notice if he will be late picking up the children; (3) he did not agree to delete the spring-break provision; (4) he should receive the federal-dependency-tax exemption for both children; and (5) the plan should have allowed tracking devices

ROSS, 22CA9

to be placed on the children's phones. Appellant thus argues that we should reverse and remand the trial court's judgment with instructions to hold a hearing on the merits.

{¶52} "The existence of a contract is a question of law." *Union Stock Yards v. Hillsboro*, 191 Ohio App.3d 564, 2010-Ohio-5975, 947 N.E.2d 183, ¶ 10 (4th Dist.). "[T]o declare the existence of a contract, both parties to the contract must consent to its terms; there must be a meeting of the minds of both parties; and the contract must be definite and certain." (Citations omitted.) *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991). A contract does not exist unless the parties have a meeting of the minds as to the essential terms of the contract. *Id.; see also Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16.

{¶53} We initially note that appellant did not argue during the trial court proceedings that the parties had not reached a meeting of the minds. Instead, he asked the court to enforce the parties' in-court settlement agreement, which the court did. When appellee presented the second-amended-shared-parenting plan to the court for approval, appellant did not object. Thus, like the arguments raised in his second assignment of error, appellant has forfeited all but plain error regarding a meeting

of the minds. Moreover, we do not believe that the trial court plainly erred by failing to determine, sua sponte, that the parties did not have a meeting of the minds.  First, appellant's "argument that there was no meeting of the minds is inconsistent with his position," on the day of the hearing, "that a settlement had been reached."  *In re K.Y.*, 8th Dist. Cuyahoga No. 109111, 2020-Ohio-4140, ¶ 11.  Furthermore, appellant cannot unilaterally repudiate the terms to which the parties agreed or seek to add new terms that were not part of the in-court settlement agreement.  *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 40, 285 N.E.2d 324 (1972) ("[t]o permit a party to unilaterally repudiate a settlement agreement would render the entire settlement proceedings a nullity, even though * * * the agreement is of binding force").  For these reasons, we do not believe that the trial court obviously erred by failing to determine, sua sponte, that the parties' competing amended-shared-parenting plans demonstrated that they had not reached a meeting of the minds.

**{¶54}** Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

ROSS, 22CA9

JUDGMENT ENTRY


It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

ROSS, 22CA9

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.